CLEVELAND WILSON v. THE STATE.

No. 6575.   Decided March 1, 1922.

Rehearing Denied June, 1922.

1.—Murder—Requested Charge—Manslaughter.

Upon trial of murder there was no error in refusing to submit a peremptory charge of acquital, nor that the evidence failed to show defendant guilty of more than manslaughter.

2.—Husband and Wife—Self-Defense—Charge of Court.

Where upon trial of murder the evidence did not show any acting on the part of the defendant in the separate defense of his wife, and there was nothing in defendant's contention that the court's charge confined his right of self-defense to the defense of himself alone, and the entire charge must be looked to which submitted defendant's right to kill in defense of himself or wife against real, threatened, or·apparent danger, there was no reversible error.

3.—Same—Charge of Court—Manslaughter.

Where defendant excepted to the charge of the court because it authorized a conviction of manslaughter, even though he was acting in defense of his wife, but there was no conviction of manslaughter, the same need not be considered.

4.—Same—Charge of Court.

Where the evidence did not show that defendant claimed to have knowl· edge of any assault by the deceased on his wife that caused her pain, or in any wise laboring under passion arising from such knowledge, there was no error in refusing the requested charge thereon; besides, the matter was fully covered in the court's main charge, in which a proper·charge both on self-defense and manslaughter were submitted, as they appeared from defendant's standpoint.

5.—Same—Suspended Sentence—Charge of Court.

There was no harm to the accused in telling the jury, in the cnarge on suspended sentence that appellant had filed an application for such suspended sentence and this did not convey the opinion of the trial court, that defendant was guilty of some degree of homicide.

**6.—Same—Requested Charges—Self Defense.**

Where a certain number of requested charges were refused on the issue of self-defense, but this matter was fully submitted in the court's main charge, there was no reversible error.

**7.—Same—Charge of Court—Withdrawal—Conversation.**

While the trial judge admitted certain testimony with reference to a conversation which took place in the hearing of defendant, but after learning that defendant did not hear the same withdrew the same from the jury at the request of the defendant, there was no reversible error.

**8.—Same—Evidence—Weapons.**

Upon trial of murder there was no reversible error to permit the State to prove that when the body of deceased was found after the homicide there were no weapons upon or around his person, in view of the fact that defendant claimed that he made demonstrations to draw a weapon.

**9.—Same—Husband and Wife—Cross-Examination.**

There was no error for the State to ask defendant's wife, on cross-examination how long she had been married to the defendant, nor to ask her how long since she had seen deceased prior to the homicide, although not having been asked these questions on direct examination.

**10.—Same—Sufficiency of the Evidence.**

Where upon trial of murder and a conviction thereof, the evidence supported the same, there was no reversible error.

Appeal from the District Court of Navarro. Tried below before the Honorable Hawkins Scarborough.

Appeal from a conviction of murder; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*Callicutt & Johnson,* and *Fred Upchurch,* for appellant.—On question of charge of court on defense of wife: Lewis v. State, 231 S. W. Rep., 113; Casey v. State, 113 id., 534; Terrel v. State, 111 id., 162.

*R. G. Storey,* Assistant Attorney General, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Navarro County of murder, and his punishment fixed at ten years in the penitentiary.

We do not deem it necessary to state the facts any further than they elucidate the points discussed and decided in this opinion.

We do not agree with appellant's contention that he was entitled to a peremptory charge of acquittal, nor that the evidence failed to show him guilty of more than manslaughter. A number of com-

plaints are made of the court's charge on self-defense and manslaughter. As affecting same and in order that appellant's view point as determined by his own testimony, may appear, we quote from his direct evidence, it already appearing that his wife and deceased were in an adjoining room to that in which he was, and that a quarrel arose between them about a division of their property. Appellant swore as follows:

"He told her: 'You are a damn lie, I am going to have it anyhow,' and she called him another damn lie, and I could hear them scuffling and I heard her squeal. I never had gone in there, hadn't showed up, and when I heard her squeal, I jumped up and ran to the dresser and got my gun; the dresser was near the door going out of the bed room, on my way out. My pistol was in the dresser drawer. I heard the scuffling and her screaming, and I jumped and got the gun and went in and met her about the hallway door, and the time he seen me he shoved his hand back and said: 'I am going to kill every G—d d—n one of you,' and by that time she had sort of got around me, and I fired. I fired three times; I fired bang, bang, bang, something like that, and the last shot I made he was falling. I don't know exactly where I hit him any of those shots; I was just all excited. When I got to the door my wife was crying and squealing and scared to death, and I was scared; she had been mentioning about him carrying a pistol before that, and when he said he was going to kill everybody, I thought he was going to do something and I didn't wait; he was a stranger to me and I didn't know what he was going to do. No, sir; I never had any malice in my heart against him; I hadn't ever met him before. I had a 32-20 Colt's automatic pistol."

On cross-examination appellant also said:

"I killed him because I thought he was going to fire on me, and because he was a stranger to me. I shot him three times and he fell over in the hallway. He was standing near the table when I shot him the first time, and he was near the table, between the table and the hallway when I shot him the second time. He was in the hallway, falling, when I shot him the third time. I was in the dining room and he was in the hallway, falling, when I shot him the third time; he was falling the last time I shot him."

It will be seen from a reading of the above that it contains no suggestion of any acting on the part of appellant in the separate defense of his wife, at the time he shot deceased. This is said with reference to appellant's contention that paragraph 4 of the court's charge confined his right of self-defense to a defense of himself alone. However, the rule is well settled that the entire charge must be looked to and we observe that in paragraph 11, 12, 13 and 14 of the charge of the court, the right of appellant to kill in defense of himself or his wife against real, apparent or threatened danger, was fully submitted. Paragraph 13 of said charge is as follows:

"You are therefore instructed that although you may believe from the evidence that Cleveland Wilson shot and killed Barse Holman on February 6th, 1921, yet if you further believe that at the time he did so Cleveland Wilson then thought or believed that Barse Holman was then making an attempt to draw his pistol, or knife, or other weapon, for the purpose of shooting him or his wife or if you believe that at the time Cleveland Wilson thought or believed that Barse Holman, judged from his words, acts and conduct, was about to take the life or do serious bodily injury to him or his wife, or that his life or that of his wife was in danger at the hands of Barse Holman, and so believing he shot and killed Barse Holman, then you will find Cleveland Wilson not guilty. Or if you have a reasonable doubt whether the killing was done under these circumstances, you will give the defendant the benefit of that doubt and find him not guilty."

An exception directed at paragraph 10 of the court's charge to the effect that it authorized appellant's conviction of manslaughter even though he was acting in defense of his wife,—would seem to call for no discussion from us in view of the fact that he was not convicted of manslaughter.

Appellant presented a special charge, which is as follows:

"If you believe from the evidence that the deceased, Barse Holman, committed an assault upon the wife of the defendant, which caused her pain, and that the same thereby rendered the mind of the defendant incapable of cool reflection at the time, and the defendant under such circumstances shot and killed Barse Holman, then in such event the defendant would not be guilty of any higher grade of homicide, if any, than manslaughter. However, if you believe from the evidence that the defendant shot and killed the deceased, but that he did so in defense of either himself or his wife from an attack then made or about to be made, as the defendant believed, upon either himself or his wife, as explained in the charge of the court, then in such event it would be your duty to acquit the defendant and say by your verdict, 'not guilty of any offense.'"

An inspection of the testimony of appellant as above set out would seem to demonstrate that he did not claim to have had knowledge of any assault by deceased on his wife that caused her pain, or that he was in anywise laboring under passion arising from his knowledge or belief regarding such assault. Charges should not be given in any case which, though abstractly correct, are not supported by proof. The trial court in his main charge fully covered the issue of manslaughter in paragraph 10 of said charge, which is as follows:

"You are therefore instructed that if you find from the evidence in this case beyond a reasonable doubt that Cleveland Wilson in Navarro County, Texas, on February 6th, 1921, in sudden passion arising from the fact that the deceased Barse Holman had committed an assault and battery on the wife of defendant, or in sudden passion

arising from any other adequate cause, as the same has been hereto-
fore explained to you, and not acting in defense of himself, did un-
lawfully shoot with a gun and did thereby kill Barse Holman, you
will find him guilty of manslaughter, and if you so find him guilty of
manslaughter you will assess his punishment at confinement in the
State penitentiary for not less than two nor more than five years,
and you will so state in your verdict.''

We cannot agree with appellant that the law of self-defense, or that
of manslaughter, was not fairly submitted by the charge. Paragraph
13, which is above quoted, seems to cover the issue of self-defense as
made by the testimony of appellant and his wife. Same does not con-
fine appellant's right to kill, to a belief that deceased was about to
shoot, as is contended.' In this connection, however, we would observe
that from appellant's evidence, if true, it would appear that such was
his belief at the time he fired. Nor do we think the charge open to
criticism based on the proposition that appellant's right to act was
founded on what he then thought and believed. His then thoughts
and beliefs were not restricted to what he then saw, but included and
were based on what he may have heard before he came to the room
where deceased and the woman were. We are unable to follow a line
of reasoning which seeks to reach the conclusion that a charge giving
to the prisoner the right to kill if he then thought and believed him-
self or his wife to be in danger,—does not as fairly state his rights
as would a charge that he would have the right to kill if an attack
had been made on his wife. In our view, in any event his act and
rights must be judged from what then appeared to him, or was then
believed by him to be the facts, and this must be determined by the
jury in the light of the facts and circumstances before them.

We can see no harm to the accused in telling the jury in the charge
on suspended sentence, that appellant had filed an application for
such suspended sentence, nor can we find support for the contention
that this statement in the charge could be considered by the jury as
evidencing the opinion of the trial court that appellant was guilty
of some degree of homicide.

Appellant was ably defended, and a number of special charges ap-
pear in the record embodying in varied form the issue of self-defense.
We have examined all of these, and have given careful consideration to
those paragraphs of the charge bearing on the issue, and in which the
jury were instructed thereon, but are not able to see that any harm
could have come from the manner or matter of the court's charge. It
seems to us to be fully applicable to the facts and to present the
law thereof.

Appellant has a bill of exceptions to the testimony of witness Sheets
who detailed a conversation which took place between deceased and
the wife of appellant on the night preceding the homicide. We judge
from the record and the recitals of the bill that the court admitted

this testimony originally upon the theory that same took place in the hearing of appellant. Officer Sheets testified that appellant was in the house and in an adjoining room, and that he passed by the door leading from the room in which ·deceased and appellant's wife were and during their conversation, and that deceased spoke to him and appellant nodded. Mr. Sheets said one in the adjoining room could easily hear what was said in the room where deceased was. Later during the trial and when appellant took the stand he testified that he did not hear any of the conversation between his wife and deceased on the night in question. Thereupon and at the request of appellant the trial court in writing told the jury not to consider any of the testimony relating to said conversation. We have examined the testimony as given which seems to relate to an amicable discussion of the division of the community property of deceased and his former wife. There was no quarrel or threats or other matters which to us could seem to be of harm to appellant, and we think the bill of exceptions presents no error.

We think it was proper for the State to prove that when the body of deceased was found after the homicide there were no weapons upon or around his person. Such evidence is for the consideration of the jury in determining the strength of their belief of the claim of the appellant that deceased followed an announcement that he was going to kill them all by throwing his hand back behind him just immediately preceding the shooting by appellant.

We do not think it error for the State to ask appellant's wife on cross-examination how long she had been married to appellant, nor to ask her how long since she had seen deceased prior to the homicide, she not having been asked about these two matters on her direct examination.

We are not led to believe that the jury's verdict was without support in the evidence because same was not in accord with the testimony of appellant and his wife who were the only eyewitnesses to the transaction. There are numerous facts in evidence which seem to cast more than a suspicion upon the truth of their narrative. Deceased was shot three times, and appellant and his wife both swore that when each shot was fired he was standing up and was in the dining room, or just going out. The falsity of this was made to appear by the fact that in the hall where the body of deceased was found and some feet away from the body there was a pool of blood in the center of which was a bullet hole going through the floor, this pool of blood being covered by a rug when the officers got there, through which rug there was no bullet hole. But one of the bullets fired into the body of deceased came out; one, seeming the fatal shot, entered the front of the head and came out at the back. There seems no reason to doubt that the shot which made this wound went also through the floor in the middle of the pool of blood found under the rug. It

would seem difficult to escape the conclusion that at the time this shot was fired deceased not yet fatally wounded, was lying on the floor. In addition to this tremendously strong physical fact may be added the statement of appellant first made after the shooting, to one of his neighbors who asked him about it, that he had killed deceased who was "cutting up and raising sand." No statement was made at that time of any self-defense by appellant or assault on the part of deceased. It was in evidence that after the shooting no one came out of the house or gave any alarm for fifteen or twenty minutes. We think the jury are at liberty to weigh the entire evidence, and that they are not necessarily bound by the testimony of the appellant and his wife.

Finding no reversible error in the record, the judgment of the trial court will be affirmed.

*Affirmed.*