# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00342-CR

**Markum Woodrow Peavey, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT NO. 05-855-K368, HONORABLE BURT CARNES, JUDGE PRESIDING

## O P I N I O N

Appellant appeals his convictions for felony driving a motor vehicle while intoxicated and evading arrest. *See* Tex. Penal Code Ann. § 38.04 (West 2003), § 49.04 (West 2003), § 49.09 (West Supp. 2007).

The jury found appellant guilty of both counts in the single indictment and made an affirmative finding on the use of a deadly weapon. At the penalty stage of the trial, appellant pleaded "true" to the three prior felony convictions alleged for the enhancement of punishment, including: a felony driving while intoxicated (DWI) conviction in 2003 in the same district court; convictions for possession of a controlled substance (marihuana) with intent to deliver and for transfer of a controlled substance (marihuana) in 1996 in the circuit court of Jackson County, Mississippi; and

a conviction for burglary of a building in 1984 in the circuit court of Jackson County, Mississippi.[1]

The jury found each of the prior convictions to be "true" and assessed appellant's punishment at

fifty-five years' imprisonment on count one and at twenty-five years' imprisonment on count two.

The trial court ordered that the two sentences run consecutively with the seven-year sentence

for DWI imposed in 2003 in cause number 01-995-K368 in the same district court of Williamson

County.

### POINTS OF ERROR

Appellant advances four points of error. Appellant claims that the trial court erred

in failing to give requested jury instructions, first, on a lesser-included offense to evading arrest as

charged in count two, and second, on the issue of voluntariness. Third, appellant asserts that the trial

court erred in preventing him from presenting evidence to substantiate his defense. Lastly, appellant

contends that the trial court made an impermissible comment on the weight of evidence before the

jury was charged at the guilt/innocence stage of the trial.

### BACKGROUND

Cedric Williams, a long-haul truck driver, was driving an 18 wheeler southbound on

IH-35 in Williamson County during the early morning hours of July 29, 2005. Over his CB radio

Williams heard chatter about a "Suburban." Shortly thereafter, Williams observed a brown-and-

beige, older model Chevrolet Suburban vehicle "swerving over the highway" causing other motorists

---

[1] The "Penalty Paragraph Three" of the indictment alleged the aforesaid burglary of a building conviction, but also alleged in the alternative, a separate Mississippi conviction for burglary and larceny in 1982.

to take evasive action to avoid collision. After following the Suburban for a few miles, Williams called 911 on his truck's company phone describing what he was observing. He stayed on the line about forty-five minutes. Williams saw the Suburban exit the interstate, enter a rest area, and stop near a bathroom, but no one got out of the Suburban. Williams continued to watch and after five to ten minutes, the Suburban drove across the grass and back onto the interstate. Williams estimated that the Suburban accelerated to approximately eighty to ninety miles per hour. Williams followed, trying to keep the Suburban in sight. When Williams saw that the police vehicles were in the area following the Suburban, he continued on to Corpus Christi.

Round Rock Police Officer Timothy Thompson was in a clearly marked police vehicle and was wearing a distinctive police uniform. He intercepted the Suburban after it entered the Round Rock city limits traveling eighty miles per hour. Officer Thompson saw the vehicle twice weave from one lane to another, and almost strike construction barrels where the roadway narrowed. Round Rock Police Officer James Hunter joined Officer Thompson in pursuit of the Suburban.[2] They were later joined by Austin city police who participated in the pursuit.

Officer Thompson first activated the flashing overhead lights on his vehicle to effect a traffic stop. The driver of the Suburban made no attempt to stop in response to the flashing lights. Officer Thompson then activated the siren on his police car, but the driver failed to respond. The speed of the Suburban fluctuated between thirty and eighty-five miles per hour. In addition to the

---

[2] Officer Hunter testified that he had been given a description of the Suburban and its Texas license plate by the dispatcher.

3

lights and siren, Officer Thompson began issuing verbal commands over his vehicle's public address system to the driver to stop the Suburban. There was still no response by the Suburban's driver.

After approximately seven to ten miles of pursuit, the Suburban exited the interstate in North Central Austin onto a frontage road, turned into a side street and pulled into a parking lot and stopped. Officer Thompson issued a verbal command for the driver to toss the car keys out of the vehicle, which was done. The driver was ordered to get out of the Suburban. After some delay, appellant exited the vehicle. No other person was in the vehicle.[3] As appellant got out, he stumbled and almost fell to the ground. He staggered as he walked backward. Despite the officer's repeated commands for appellant to lie on the ground, appellant seemed preoccupied with one of his boots or pants leg and kept reaching down towards his foot. The officers suspected that appellant might have a weapon. Appellant argued with the officer about getting on the ground. Appellant said that he was trying to get his shoes off. When told that if he did not follow commands, he was going to be shot with a beanbag gun, appellant replied, "Go ahead and shoot me. Kill me then." As the officers struggled to get the handcuffs on, appellant continued to resist, and officer Hunter had to use pepper spray on appellant. Appellant's eyes were washed out with water and emergency medical services treated him.

Appellant was transported to the Round Rock jail facility where he refused a breath test. Officer Thompson administered a horizontal gaze nystagmus field sobriety test, but appellant declined the other tests because of injuries to his leg or legs. Because appellant had been pepper

_____

[3] There never was an issue as to appellant's identity as the driver of the Suburban. Appellant, in his own testimony, admitted that he was the driver of that vehicle. In addition, police videotapes of the events in question were introduced into evidence.

4

sprayed, he was interviewed by a medical officer before being placed in jail. Officers Thompson and Hunter both testified that appellant's speech was slurred, that he smelled of alcohol, and was intoxicated. It was established that, in the opinion of the officers, appellant did not have control of his mental or physical faculties.

Chester (Chet) Tutor testified that appellant was employed in Tutor's construction company and was a loyal, honest, and trustworthy employee and supervisor of some of Tutor's building sites. Tutor said that he rehired appellant after appellant got out of prison on parole after his 2003 felony DWI conviction. Tutor purchased the Suburban involved in this case and was allowing appellant to pay him back. Tutor had not seen appellant on July 28 or July 29, 2005, and was not an eyewitness to the events in question. Tutor telephoned appellant on July 28th and asked him to go to the home of Tutor's ex-wife, Georgia, and fix the alternator on Georgia's car.

Appellant testified that he had been twice convicted for DWI in 2001, for offenses occurring in September and in December 2000. He acknowledged that on July 28, 2005, he was on parole from a seven-year sentence for another DWI conviction in 2003, and on that day, his driver's license had been restored. He also admitted the marihuana convictions alleged in the indictment and the alleged burglary convictions.[4] The forty-two-year-old appellant stated that he was an alcoholic, came from a family of alcoholics, and had started drinking at the age of fourteen. He also admitted that he had used "pot."

---

[4] Appellant also testified at the punishment hearing and admitted a fourth DWI conviction in Alaska. The instant DWI was appellant's fifth arrest for that type of offense.

Appellant testified that he worked "a half day" on July 28, 2005, supervising the construction of several different houses and at about 6:30 p.m., he drove to east Austin to pick up an employee, Gilbert Guerra, and take him to Leander where Guerra was to be a night watchman over construction supplies for six sites. Before reaching the designated location, appellant stopped his Suburban to get gas and Guerra purchased an 18-pack of beer. Upon arriving at Guerra's trailer, appellant consumed one beer, as he recalled, and Guerra gave him two or three beers to take with him. At about 8:30 p.m., appellant stated that he arrived at Georgia's house where Chester's son, Tom Tutor, lived with his mother. Appellant found the Honda's engine too hot to work on, so he let it cool down. He drank two of the beers that he had, and Tom Tutor drank the other.

Appellant stated that he and Tom had not always been on good terms. Both had worked for Tom's father, Chet, and appellant supervised Tom. Appellant had reported Tom to Chet for using "pot" while working. Later, Tom was arrested for DWI while using Xanax and was fired. Appellant believed that Tom was jealous of appellant's relationship with Chet.

Appellant recalled that when the vehicle's engine cooled, he began work on it and finished at about 11:00 p.m. When he finished, appellant reported that Tom brought him a glass of red wine. Appellant claimed that he normally did not like wine, but he drank it on this occasion. Afterward, appellant testified that he had no further memory until he awakened in jail at about 10:30 a.m. the next morning.

Gilbert Guerra testified for the defense and confirmed that appellant had transported him to a trailer in Leander. But Guerra stated that when they reached the trailer, appellant consumed two or three beers before leaving, and that he gave appellant two to three more beers to take with

6

him. Guerra admitted that he consumed five or six beers during the 35 to 40 minutes that appellant was present.

Adrian Nira, a medical officer deputy with the sheriff's office, also testified for the defense. Deputy Nira stated that he examined and interviewed appellant before he was jailed because he had been pepper sprayed. Deputy Nira noticed that appellant's eyes were excessively dilated and were slow to respond to a light stimulus. He did not believe that this was a normal reaction for a person intoxicated on only alcohol. Appellant admitted to Nira that he had been drinking, but denied using narcotics. While appellant answered some questions, he was non-responsive to others.

In rebuttal, the State called Dolores Pritchard, Tom Tutor's live-in girlfriend. She testified that she arrived home from work between 10:30 and 11:00 p.m. on July 28, 2005, and found appellant and Tom working on a car. Later, she came out of the house while appellant and Tom were gathering tools. She heard Tom offer appellant a glass of wine and saw both of them drinking the wine. She reported that Tom brought appellant two or three glasses of wine, and on occasion, appellant went inside the house. She estimated that appellant drank four or five glasses of wine. Later Tom's mother, Georgia, came out and offered money to appellant for fixing her car's alternator. Appellant refused the offer. Pritchard reported that appellant then made an off-color remark about Georgia's breasts, but they let it pass because appellant had been drinking. Pritchard recalled that when appellant started to leave at about 1:00 or 1:30 a.m. on July 29, 2005, Georgia asked appellant for his car keys and offered him a place to stay that night. Appellant insisted that

he was able to drive and rejected pleas for his keys. Pritchard said that she then offered to drive appellant, which he refused. Appellant left in his Suburban at about 1:30 a.m.

In his brief, appellant admits that he voluntarily drank beer on July 28, 2005, but denies that he used narcotics. He speculates he was intoxicated at the time of his arrest because Tom Tutor placed a drug into the glass of wine that appellant drank. There is no evidence to support this assertion. Appellant relies on his alleged loss of memory, Deputy Nira's testimony, and one question asked of Officer Hunter on re-cross examination.[5]

## EXCLUSION OF EVIDENCE

In his third point of error, appellant urges that the "trial court erred in preventing appellant from presenting evidence to substantiate his defense." Appellant complains of the exclusion of two separate items of evidence combined in a single point, which is a multifarious point and risks dismissal on that basis. *See Martinez v. State*, 924 S.W.2d 693, 698 (Tex. Crim. App. 1996). First, appellant complains that part of Chet Tutor's testimony should not have been excluded as irrelevant. Second, he urges that the trial court erred in excluding a videotape of his 2000 arrest for DWI, which led to a DWI conviction in 2001, because the jury should have been able to compare that prior videotape with the videotape in the instant case that was in evidence.

Chet Tutor testified that he was a general building contractor who operated a company known as American Dream Services. Appellant worked for Chet and was a foreman with the

---

[5] Q. And although Mr. Peavey (appellant) exhibited signs of possible introduction of narcotics into his system, you didn't find any narcotics in the vehicle, did you?

A. No, Ma'am.

8

company.  Chet considered appellant to be a trusted and loyal employee.  Chet also testified that his 46-year-old son, Tom Tutor, was released from prison and went to work with the company several weeks before appellant's July 2005 arrest at issue.  Tom worked under appellant's supervision because Chet stated that he trusted appellant more than his own son.  Chet stated that Tom was jealous of his father's relationship with appellant, did not want to work under appellant's supervision, and left his father's employment.

Subsequently, appellant asked Chet if Tom had any medical diagnosis, to which the State objected on grounds of relevancy.  Appellant's counsel explained that this inquiry was "part of the defense theory, that Tom Tutor had the opportunity and motive to drug and get [appellant] Mark Peavey in trouble.  What I want to establish through this line of questioning is that—Tom Tutor had a medical diagnosis for which he had been prescribed medications, to which he would have had access and would have had the opportunity to slip to our client, which medication would have caused reactions that we see in Mark Peavey on the night of the offense."  When the trial court inquired whether a doctor would be called to testify about what had been prescribed and the reactions to any drugs, appellant's counsel responded "No."  Counsel stated that he would rely on Chet's testimony about the medications.  The trial court sustained the State's objection.

Later, appellant's counsel made an offer of proof.  *See* Tex. R. Evid. 103(a) (2).  The offer related that appellant wanted to show through Chet's testimony "that his son, Tom Tutor, had some sort of medical diagnosis for which we had—he had prescription medication, that he Mr. Chet Tutor believed was Paxil which is a controlled substance."  The offer further stated that appellant wanted to show by the elder Tutor's testimony "that Tom Tutor had legitimate access to a controlled

9

substance which caused Tom Tutor to behave peculiarly, as a 'space cadet' in Mr. Chet Tutor's opinion, which was similar to the manner in which he understood that Mark Peavey had been acting at the time of the alleged offense."

The offer does not reveal the nature of the medical diagnosis, who made the diagnosis, or when it was made. The offer does not reflect the personal knowledge of the witness or his qualifications to determine what are controlled substances.[6] The balance of the offer speaks for itself. The witness was not a fact witness to the events of July 28-29, 2005. Moreover, Tom was not working for his father at the time of appellant's offenses, but lived with his mother, who had been divorced from his father for twenty-nine years.

The other item excluded was a police videotape of appellant's arrest for DWI in 2000, which resulted in one of his 2001 DWI convictions. Appellant wanted the jury, who had seen the videotape in the instant case, to compare it with the 2000 videotape so that they could "see what he (appellant) looked like when he's been drinking all day versus what we think might have happened in this case." It is apparently appellant's position that the earlier videotape would show how appellant acted when he was under the influence of alcohol alone, as opposed to how the instant videotape showed appellant acted under the influence of alcohol and possibly a narcotic. The trial court sustained the State's objection of relevancy as to the 2000 DWI videotape. The State had argued that the evidence did not show the amount of intoxicants that appellant had consumed on the other occasion; and that there was no evidence that appellant had unknowingly ingested a drug in

---

[6] At one point, Chet Tutor did testify, without objection, that his son "had a prescription," without further identification of the drug.

10

addition to the voluntarily consumed beer on the latter occasion. Further, there was no medical or expert testimony that the ingestion of a drug would have caused appellant to react as he did on the latter occasion.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005); *Zuliani v. State*, 97 S.W.2d 589, 595 (Tex. Crim. App. 2003); *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990). A trial court has discretion in determining the admissibility of evidence, and its ruling will not be disturbed as long as it is within the zone of reasonable disagreement. *Apolinar*, 155 S.W.3d at 186; *Montgomery*, 810 S.W.2d at 391. A trial court's ruling will be upheld if it is reasonably supported by the record and correct on any theory of the law applicable to the case. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). We conclude that the trial court did not abuse its discretion in excluding the two items of evidence detailed.

Appellant cites many cases for the proposition that a criminal defendant has a constitutional right to present a defense. *See, e.g.*, *Gilmore v. Taylor*, 508 U.S. 333, 343 (1993); *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). At no time, however, did appellant call to the trial court's attention, by objection or otherwise, that the court was depriving him of his constitutional right to present a defense. *Cf. Henderson v. State*, 962 S.W.2d 544, 558 (Tex. Crim. App. 1997). As appellant himself points out, the fundamental right to present evidence of a defense exists only so long as the evidence is relevant and not excluded by an established evidentiary rule. *See Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). Here, the evidence was not relevant and the Court's rulings were in accord with Rules 401 and 402 of the Texas Rules of Evidence. Even if the

11

two items of evidence were relevant, it may have been excluded if its probative value were substantially outweighed by such factors as the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See* Tex. R. Evid. 403. The third point of error is overruled.

## JURY INSTRUCTION—VOLUNTARY CONDUCT

In his second point of error, appellant complains that the "trial court erred in failing to properly instruct the jury regarding appellant's requested voluntariness charge, and such was harmful to appellant." At trial, appellant offered a special requested jury instruction. *See* Tex. Code Crim. Proc. Ann. art. 36.15 (West 2006). The record reflects:

| Defense Counsel: | Judge, we would like to put it on the record that we had requested a charge on voluntary conduct and that charge specifically would have been, "you're instructed that a person commits an offense only if he voluntarily engages in conduct including an act, omission, or possession." |
|---|---|
| Court: | Thank you, ma'am and that was requested and I denied that charge. |

The requested instruction was based on the language in section 6.01(a) of the penal code. *See* Tex. Penal Code Ann. § 6.01(a) (West 2003). The request sought only an abstract instruction on the law. Appellant did not request that the law be applied to the facts in the jury charge. No defense or defensive theory was mentioned or suggested. No evidence in the record was

12

called to the trial court's attention as supporting any defensive theory. Further, no effort was made to clarify whether the requested abstract instruction applied to one or to both offenses charged.[7]

A defendant is entitled, upon a timely request, to an instruction on any defensive theory raised by the evidence, provided that (1) the defendant timely requests an instruction on that specific theory, and (2) the evidence raises that issue. *Rogers v. State*, 105 S.W.3d 630, 639 (Tex. Crim. App. 2003). To preserve error for appellate review, the defendant must sufficiently identify the defensive theory for which he seeks an instruction. *Id*. at 639-40. This appellant did not do.

On appeal and with new counsel, appellant for the first time claims that his defense was automatism, a defense of an individual not engaging in a voluntary act. *See Mendenhall v. State*, 77 S.W.3d 815, 818 & n.4 (Tex. Crim. App. 2002). Appellant points out that automatism as a defense involves, *inter alia*, being unconscious or semiconscious at the time of the acts constituting the offenses. *Id.*; *see also Nelson v. State*, 149 S.W.3d 206, 211 (Tex. App.—Fort Worth 2004, no pet.). Appellant argues that persons in such condition do not engage in a voluntary act.

"'Automatism is defined as (1) action or conduct occurring without will, purpose, or reasoned intention such as sleep walking, behavior carried out in a state of unconsciousness or

---

[7] The request for a particular instruction need not be perfect but must be adequate to give the trial court, in the midst of trial, a clear understanding of the particular subject of the instruction. *Rogers v. State*, 105 S.W.3d 630, 640 n.34 (Tex. Crim. App. 2003). Requested jury instructions are properly refused where they are either abstract or not supported by the evidence. *Blair v. State*, 80 S.W.2d 978, 979 (Tex. Crim. App. 1935); *Wilson v. State*, 242 S.W. 224, 226 (Tex. Crim. App. 1922). Jury charges that fail to apply the law to the facts adduced at trial are erroneous. *Gray v. State*, 152 S.W.3d 125, 128 (Tex. Crim. App. 2004); *Guevara v. State*, 191 S.W.3d 203, 206 (Tex. App.—San Antonio 2005, pet. ref'd). Appellant does not claim that he was entitled to only an abstract charge on the law. *See* Tex. R. App. P. 38.1.

13

mental dissociation without full awareness . . . , (2) The state of a person who, though capable of action is not conscious of his or her actions.'" Black's Law Dictionary 129 (7th ed. 1999); *see also* 2 Wayne R. LaFave, *Substantive Criminal Law* § 9.4(a) at 33 (2d ed. 2003);[8] *Nelson*, 49 S.W.3d at 211.

"Voluntariness" within the meaning of section 6.01(a) refers only to one's own physical body movements. *Rogers*, 105 S.W.3d at 638; *Brown v. State*, 89 S.W.3d 630, 633 (Tex. Crim. App. 2002). Although "automatism" was not mentioned, the Texas Court of Criminal Appeals has stated in connection with the meaning of "voluntariness":

> If these physical movements are the nonvolitional result of someone's act, are set in motion by some independent non-human force, are caused by a physical reflex or convulsion, or are the product of unconscious, hypnosis or other nonvolitional impetus, that movement is not voluntary."

*Rogers*, 105 S.W.3d at 638.

The difficulty with appellant's argument is that he does not, even now, sufficiently point out what evidence supports his claim to the defense of automatism—that of being unconscious or semiconscious at the time in question. The fact that appellant testified that he could not recall what had happened when he awakened in jail later that morning does not support his claim of automatism. "[I]t is not enough [to raise the defense of automatism] that the defendant suffers from

---

[8] Professors LaFave and Scott have pointed out that, consistent with the defense of automatism (being in a state of unconsciousness or semiconsciousness), American courts have recognized that an automatism defense might be made out when the defendant's condition is brought about by a variety of circumstances, including epilepsy, somnambulism, hypnosis, concussion or some physical or emotional trauma. 2 Wayne R. LaFave, *Substantive Criminal Law* § 9.4 at 34-35 (2d ed. 2003).

amnesia and thus cannot remember the events in question." 2 Wayne R. LaFave, *Substantive Criminal Law* § 9.4(b) at 35. The evidence demonstrates that appellant's acts were voluntary. Appellant admitted that his consumption of beer on the date in question was voluntary. His claim that he might have been drugged by Tom Tutor is not supported by the evidence and is mere speculation. There was no evidence to show that appellant was unconscious or semiconscious at the time of the commission of the offenses charged. Appellant did not identify his defensive theory at the time or articulate to the trial court what he wanted. *See Rogers*, 105 S.W.3d at 639-40. Appellant's request for an abstract instruction on the law alone did not preserve error for review.

Moreover, an instruction on voluntariness under section 6.01(a) is necessary only if the accused admits committing the act or acts charged and seeks to absolve himself of criminal responsibility for engaging in the conduct. *Trujillo v. State*, 227 S.W.3d 164, 169 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd); *Bell v. State*, 867 S.W.2d 958, 962 (Tex. App.—Waco 1994, no pet.). "When a person claims the involuntary act defense he is conceding that his own body made the motion but denies responsibility for it." *Rogers*, 105 S.W.3d at 639 n.30 (quoting Sanford H. Kadish, *Excusing Crime*, 75 Cal. L. Rev. 257, 259 (1987)). Here, appellant did not admit committing the offenses charged.

For a number of reasons, the trial court did not err in denying the requested charge. The second point of error is overruled.

## LESSER-INCLUDED OFFENSE—JURY INSTRUCTION

In his first point of error, appellant contends that the trial court erred in failing to charge the jury, despite appellant's objection, on a lesser-included offense to the offense of evading

15

arrest under article 38.04 as charged in the second count of the indictment. *See* Tex. Penal Code Ann. § 38.04.[9] Appellant claims that the lesser-included offense is that of fleeing or attempting to elude a police officer. *See* Tex. Transp. Code Ann. § 545.421 (West 1999).[10]

---

[9] Section 38.04 provides in pertinent part:

(a)     a person commits an offense if he intentionally flees from a person he knows is a peace officer attempting lawfully to arrest or detain him.

(b)     an offense under this section is a class B misdemeanor, except that the offense is:

(1)     a state jail felony if the actor uses a vehicle while the actor is in flight and the actor has not been previously convicted under this section.

Tex. Penal Code Ann. § 38.04(a), (b)(1) (West 2003).

In count two of the indictment it was alleged that on or about July 29, 2005, appellant "intentionally fled from Timothy Thompson, a person he knew was a peace officer attempting lawfully to arrest or detain the [appellant] and the [appellant] used a vehicle while the [appellant] was in flight."

The State did not allege or prove that appellant had not been previously convicted. *See* Tex. Penal Code Ann. § 38.04 (b)(1). We do not conclude that the legislature intended for the State to allege and prove a negative. We hold that the State's failure to plead and prove a prior conviction is sufficient to establish that appellant had no such conviction. *See Hooker v. State*, No. 12-02-00173-CR, 2003 Tex. App. LEXIS 7668, at *12 (Tex. App.—Tyler Aug. 23, 2007, pet. ref'd); *Gray v. State*, 05-03-00712-CR, 2003 Tex. App. LEXIS 10039, at *4 (Tex. App.—Dallas Nov. 26, 2003, no pet.); *cf. State v. Atwood*, 16 S.W.3d 192, 196 (Tex. App.—Beaumont 2000, pet. ref'd) (involving third-degree felony under section 38.04(b)(2) of penal code).

[10] Section 545.421, in pertinent part, provides:

(a)     A person commits an offense if the person operates a motor vehicle and wilfully fails or refuses to bring the vehicle to a stop or flees, or attempts to elude, a pursuing police vehicle when given a visual or audible signal to bring the vehicle to a stop.

16

At the charge conference in the trial court, appellant timely asserted his claim that the class B misdemeanor under section 545.421 was a lesser-included offense of the alleged state-jail felony under section 38.04 of the penal code as alleged in the indictment. The trial court overruled appellant's objection.

We are aware that our sister courts of appeals are in disagreement over this issue. The Fort Worth Court of Appeals has treated the misdemeanor offense under section 545.421 as a lesser-included offense of the state-jail felony of evading arrest under section 38.04. *See Walker v. State*, 95 S.W.3d 516, 519 (Tex. App.—Fort Worth 2002, pet. ref'd); *see also Klapuch v. State*, No. 13-05-025-CR, 2005 Tex. App. LEXIS 9121, at *4-5 (Tex. App.—Corpus Christi Nov. 3, 2005, no pet.) (mem. op., not designated for publication); *Martin v. State*, No. 02-04-107-CR, 2003 Tex. App. LEXIS 644, at *12-13 (Tex. App.—Fort Worth, Aug. 11, 2003, no pet.) (mem. op., not designated for publication); *Farmer v. State*, No. 12-03-00117-CR, 2004 Tex. App. LEXIS 6265, at *6-8 (Tex. App.—Tyler July 14, 2004, no pet.) (mem. op., not designated for publication).

The First Court of Appeals in Houston disagreed with the *Walker* decision and, after comparing the elements of the two offenses, concluded that the misdemeanor offense was not a lesser-included offense of evading arrest, a state-jail felony. *See Farrakhan v. State*, No. 01-04-

---

    (b)     A signal under this section that is given by a police officer pursuing a vehicle may be by hand, voice, emergency light, or siren. The officer giving the signal must be in uniform and prominently display the officer's badge of office. The officer's vehicle must be appropriately marked as an official police vehicle.

Tex. Transp. Code Ann. § 545.421(a), (b) (West 1999).

0125-CR, 2006 Tex. App. LEXIS 10317, at *25-36 (Tex. App.—Houston [1st Dist.] Nov. 10, 2006, pet. granted).

Later, in *Horne v. State*, 228 S.W.3d 442, 446-49 (Tex. App.—Texarkana 2007, no pet.), the Texarkana Court recognized the split of authority as well as the recent decision in *Hall v. State*, 225 S.W.3d 524 (Tex. Crim. App. 2007), and agreed with the *Farrakhan* decision by the First Court of Appeals. *Horne*, 228 S.W.2d at 449.

To make our own determination, we turn to article 37.09. *See* Tex. Code Crim. Proc. Ann. art. 37.09 (West 2006). This statute was first enacted in 1973 (effective Jan. 1, 1974), and was Texas's first general statute defining lesser-included offenses. *See Hall*, 225 S.W.3d at 526-27 & n.11. Article 37.09 provides:

An offense is a lesser included offense if:

> (1)    it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;
>
> (2)    it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;
>
> (3)    it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or
>
> (4)    it consists of an attempt to commit the offense charged or an otherwise included offense.

Tex. Code Crim. Proc. Ann. art. 37.09.

18

It is obvious that appellant relies upon article 37.09(1) to support his lesser-included offense contention. He makes no claim under the other subsections of the statute, nor has he briefed any such claim. *See* Tex. R. App. P. 38.1.

There is a vast amount of case law interpreting article 37.09(1), and not all of it is consistent. However, *Hall* has now abrogated a considerable body of case law in this area. 225 S.W.3d at 535-537 & n.58. *Hall* involved the issue of whether aggravated assault by threat was a lesser-included offense of murder. *Id*. at 525. The Texas Court of Criminal Appeals concluded that it was not a lesser-included offense. *Id*. The *Hall* court held that the determination of whether a lesser-included offense is involved should be made by comparing the elements of the greater offense, as the State pled it in the indictment, with the elements of the statute that defines the lesser offense. *Id*. at 525, 535-36. The court noted that the "cognate-pleadings" approach—in which the court looks to the facts and elements as alleged in the charging instrument and not just to the statutory elements of the offense—is the sole test for determining, in the first step, whether a party is entitled to a lesser-included-offense instruction. *Id*. at 526, 535. The court held that the language of "facts required" in article 37.09(1) does not mean "facts presented at trial," but means evidence legally required to prove the elements. *Id*. at 534 (quoting *Jacob v. State*, 892 S.W.2d 904, 908 (Tex. Crim. App. 1995)).

Harking back to the short-lived opinion on original submission in *Day v. State*, 532 S.W.2d 302 (Tex. Crim. App. 1976), the court reviewed at length the case law that has developed regarding lesser-included offenses, disapproved of certain statements in its opinion on rehearing in *Day*, 532 S.W.2d at 310-16, and abrogated subsequent decisions that are contrary to

19

the cognate-pleading analysis used in *Day*'s opinion on original submission. *Hall*, 225 S.W.3d at 527-537. The Court explained the application of the test adopted:

> The first step in the lesser-included offense analysis, determining whether an offense is a lesser-included offense of the alleged offense, is a question of law. It does not depend on the evidence to be produced at the trial. It may be, and to provide notice to the defendant must be, capable of being performed before trial by comparing the elements of the offense as they are alleged in the indictment or information with the elements of the potential lesser-included offense. The evidence adduced at trial should remain an important part of the court's decision whether to charge the jury on lesser-included offenses. The second step in the analysis should ask whether there is evidence that supports giving the instruction to the jury. 'A defendant is entitled to an instruction on a lesser-included offense where the proof for the offense charged includes the proof necessary to establish the lesser-included offense and there is some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser-included offense.' In this step of the analysis, anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser charge. In other words, the evidence must establish the lesser-included offense as 'a valid, rational alternative to the charged offense.'

*Id.* at 535-36 (citations omitted).

Applying the first step of the *Hall* analysis to the instant case, a question of law, we do not consider the evidence that was presented at trial. Instead, we consider the statutory elements of article 38.04(a), (b)(1) as they were modified by the particular allegations in the second count of the indictment:

(1)     appellant;

(2)     intentionally;

(3)     fled [flees];

(4)     from a person [Timothy Thompson];

20

(5)     he knows is a peace officer;

(6)     attempting to lawfully arrest or detain him; and

(7)     appellant uses a vehicle in flight.

*See* Tex. Penal Code Ann. § 38.04(a), (b)(1).

We now compare these elements with the elements of the misdemeanor offense of fleeing or attempting to elude a police officer under section 545.421 of the transportation code: (1) a person; (2) operates a motor vehicle; (3) and wilfully; (4) fails or refuses to bring vehicle to a stop; or (5) flees pursuing police vehicle; (6) when given a visual or audible signal to bring the vehicle to a stop; (7) and the signal is by hand, voice, emergency light, or siren; (8) officer giving signal is in uniform; (9) with prominently displayed badge, and (10) the officer's vehicle must be appropriately marked as an official police vehicle. *See* Tex. Transp. Code Ann. § 545.421(a), (b) (West 1999).

All of the foregoing elements must be proven to obtain a conviction under section 545.421. This statute requires that the defendant be signaled visually or audibly to stop and that he be pursued by a marked police vehicle that is driven by a uniformed officer who is prominently displaying a badge. The state-jail felony of evading arrest under article 38.04, and as alleged here in the indictment, does not expressly contain these elements.

The elements of evading arrest under article 38.04 as alleged required the State to prove that appellant, by using a motor vehicle, intentionally fled from Officer Thompson when appellant knew Thompson was a peace officer attempting to arrest or detain him lawfully. Article 38.04 did not require the State to prove, for example, that Officer Thompson was in a vehicle of any kind, that the officer was uniformed and prominently displaying a badge, or—if the officer was

21

operating a vehicle—that the vehicle was appropriately marked as an official police vehicle. The fact that the State could and did present evidence in the prosecution of evading arrest under section 38.04 that also reflected the elements of the misdemeanor offense under section 545.421 does not mean that the State was required to do so. In fact, it was irrelevant. *See Jacob v. State*, 892 S.W.2d 904, 909 (Tex. Crim. App. 1995).

We ask the question that article 37.09(1) poses: are the elements of the lesser offense "established by proof of the same or less than all the facts required to establish the commission of the offense charged?" *See Hall*, 225 S.W.3d at 536. The answer is that they are not. *See id.* The facts required to prove the lesser offense include a number of elements that are not the same as, or less than, those required to establish the offense charged. *See id.* If the first step of the *Hall* analysis is not met, there is no second step. The trial court did not err in overruling appellant's objection to the Court's jury charge on the lesser-included offense. Point of error one is overruled.

## COMMENT BY TRIAL COURT

In his fourth point of error, appellant complains that the "trial court made an impermissible comment on the weight of the evidence before the jury was charged." Prior to reading the court's charge to the jury at the guilt/innocence stage of the trial, the trial court gave an oral explanation to the jurors about the expected procedures. During these remarks, the trial judge explained that under a rotation plan, he would be handling juvenile cases that afternoon. The trial judge then added:

> If you have a question and I'm over there, they will call me, and I'll come back, and we'll take care of it. If there's any problem, I'll take a break and come. But I'm

telling you that we probably—well, we won't be doing anything other than deliberating. But if you come back early with a verdict, we'll probably end up breaking and starting testimony in the morning. I've already told both sides, and they understand why.

There was no timely objection to the trial judge's statements. The charge was read to the jury, counsel concluded their arguments, and the jury retired to deliberate. Approximately thirty minutes later, the trial court, in the jury's absence, announced for the record that it had come to the court's attention that its remarks might be considered a comment on the weight of the evidence by indicating the possibility of additional testimony after a verdict. The trial court proposed to bring the jury back to the courtroom and give an instruction to disregard. Counsel conferred with appellant and rejected the trial judge's offer on the basis that it would call more attention to the remarks. The careful trial court inquired personally of appellant, who again rejected the offer of a jury instruction. Appellant's motion for a mistrial claiming a violation of the Fifth and Fourteenth Amendments to the United States Constitution was overruled.

The trial judge then stated that it had not been his intent to make an improper comment because, "it certainly went by me," and inquired why the issue was belatedly raised. One of the appellant's counsel explained that it occurred to him "afterwards," that he had heard the remark but could not recall whether the jury was present or not, and that he had been preparing his jury argument. It was later that he had the record checked. Appellant's other counsel made no explanation. The trial court lamented the lack of a timely objection so corrective action could have been taken, but stated it would abide by appellant's decision not to have a jury instruction to disregard the statements.

To preserve a complaint for appellate review, a defendant must make a timely, specific objection in the trial court. *See* Tex. R. App. P. 33.1(a); *Rhoades v. State*, 934 S.W.2d 113, 119 (Tex. Crim. App. 1996). A party's failure to timely object generally waives all error unless the statement is so prejudicial that no instruction could have cured the harm. *Davis v. State*, 177 S.W.3d 355, 363 (Tex. App.—Houston [1st Dist.] 2005, no pet.). The contemporaneous objection requirement encompasses improper comments by the trial court on the weight of the evidence. *Mestiza v. State*, 923 S.W.2d 720, 724, 726 (Tex. App.—Corpus Christi 1996, no pet.). Therefore, failure to timely object to the trial court's comments on the weight of the evidence does not preserve error on appeal. *See Havard v. State*, 800 S.W.2d 195, 211 (Tex. Crim. App. 1989), *reversed on other grounds*, No. 69,581, 1990 Tex. Crim. App. LEXIS 145, at *16 (Tex. Crim. App. 1990) (op. on reh'g); *White v. State*, 601 S.W.2d 364, 366 (Tex. Crim. App. 1980); *Minor v. State*, 469 S.W.2d 579, 580 (Tex. Crim. App. 1971). In such cases, there is a waiver of error and nothing is presented for review. *Williams v. State*, 191 S.W.3d 242, 251, 252-54 (Tex. App.—Austin 2006, no pet.); *Nunez v. State*, 117 S.W.3d 309, 319 (Tex. App.—Corpus Christi 2003, no pet.). Thus, a claim that the trial court improperly commented on the weight of evidence is forfeitable by inaction. *Martinez v. State*, 147 S.W.3d 412, 419 (Tex. App.—Tyler 2004, pet. ref'd).

In the instant case, appellant did not timely object and thus did not preserve error for review. Trial judges often respond to objections with curative action to correct their own statements when the matter is brought to their attention. *See Fletcher v. State*, 960 S.W.2d 694, 701 (Tex. App.—Tyler 1997, no pet.); *Hicks v. State*, 901 S.W.2d 614, 617 (Tex. App.—San Antonio 1995, pet. ref'd). Generally, an instruction to disregard any comment made by the court is sufficient to cure any error. *Marks v. State*, 617 S.W.2d 250, 252 (Tex. Crim. App. 1981); *Fletcher*,

960 S.W.2d at 701. Here, appellant and his counsel rejected the trial court's offer to give a jury instruction to disregard the comment and cure any error after the matter was belatedly brought to the court's attention.

Appellant has not based his appeal on the refusal to grant a mistrial, but rather relies, in part, upon article 38.05, which statutorily prohibits a judge from commenting on the weight of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.05 (West 1979). Appellant did not object on this basis at trial. Moreover, a violation of article 38.05 is forfeited by inaction, *see Moore v. State*, 907 S.W.2d 918, 923 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd), or as here, by belated action and refusal to accept a jury instruction to disregard.

Appellant further relies on his claim that the trial court's comment was fundamental error of constitutional dimensions, which did not require an objection. He cites *Blue v. State*, 41 S.W.3d 129, 132 (Tex. Crim. App. 2000). The plurality opinion in *Blue* is not binding precedent that must be followed. *See Jasper v. State*, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001). Moreover, the trial court's comment here was a far cry from those in *Blue*. *Cf.* 41 S.W.3d at 130. Taken in context, the trial court's remarks were an explanation to the jury about an anticipated delay in the trial. Even if error had been preserved, such comment could have been cured by an instruction to disregard. It certainly did not constitute fundamental error or deprive appellant of due process. The fourth point of error is overruled.

The judgment is affirmed.

_____

John F. Onion, Jr., Justice

Before Justices Puryear, Henson and Onion*

Affirmed

Filed:   March 12, 2008

Publish

* Before John F. Onion, Jr., Presiding Judge (retired), Texas Court of Criminal Appeals, sitting by assignment.  *See* Tex. Gov't Code Ann. § 74.003(b) (West 2005).