02-10-492-CR










 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-10-00492-CR

 

 


 
 
 Patricia Ann Jeffress
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM THE 432nd
District Court OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

I.  Introduction

          Appellant
Patricia Ann Jeffress appeals her conviction for murder.  In two issues,
Jeffress claims that the trial court erred by sustaining the State’s objections
during her redirect examination of a defense character witness and by requiring
her counsel to apologize to the prosecutor in the presence of the jury. We will
affirm.

II.  Factual and Procedural Background

Jeffress
shot and killed her husband, Joe Bob Jeffress, Sr., while he slept. She pleaded
guilty before the jury and the trial court proceeded to the punishment phase of
trial.  The jury assessed Jeffress’s punishment at sixty-five years’
confinement, and the trial court sentenced her accordingly. 

During the punishment phase of Jeffress’s
trial, defense counsel called Jeffress’s hairdresser, Martha “Marti” Garcia, to
testify as a character witness for the defense.  On direct examination, Garcia
testified that she met Jeffress about one year before the murder when Jeffress
came into her salon.  Garcia testified that she cut Jeffress’s hair three or
four times during that year and that Jeffress had also introduced her to Joe.  Garcia
testified that Jeffress came to the salon one day to tell her that she had
killed Joe.  Garcia testified on direct examination that, in her opinion, Jeffress
was a “wonderful,” “kind and sweet” person who was “trying hard to . . . stay
in her marriage” and that Jeffress seemed “joyous” on the outside but had “sorrow”
and “pain” on the inside.  

On cross-examination, the State attempted to
impeach Garcia’s characterization of Jeffress by asking Garcia a series of “were
you aware” questions.[2]  Specifically, the State
asked Garcia if she was aware that before Jeffress killed Joe, Joe had told
Jeffress that he was “okay” with her leaving and divorcing him and that
Jeffress had searched the Internet for freezers large enough to hold Joe’s
body, for a company called “US Cold Storage,” which stores and transports large
meats, and for information on whether lime would kill bacteria.  The State also
asked Garcia if she was aware that after Jeffress had killed Joe, Jeffress
purchased a large freezer and attempted to put Joe’s body in the freezer, liquidated
stock held in Joe’s Ameritrade account, attempted to modify Joe’s will to exclude
his only son as a beneficiary and name herself as the sole beneficiary, and
attempted to have the modified will notarized.  To each of these questions,
Garcia answered that she was unaware of the facts stated by the prosecutor.    


On redirect examination, Jeffress’s defense
counsel asked Garcia the following:

Q.       Marti,
you understand that those are just questions?

A.        Yes.

Q.       They’re
ifs, right?

A.        (Moving
head up and down).

Q.      We don’t know
for sure how much of -- of that is accurate at this point?

 

A.      Yes.

 

Q.      Okay.

 

[THE PROSECUTOR]: 
Judge, I’m going to object.  That’s evidence that’s been tendered in this
particular case and that’s . . . .  

 

Before
the prosecutor could complete his objection, the trial court called the
prosecutor and defense counsel to a bench conference.    

During
the bench conference, the following exchange occurred:

          THE COURT:  [Defense counsel] would
you please tell me if --

 

          [DEFENSE COUNSEL]:   I --

 

THE COURT:  Let me
finish.  Would you please tell me what items that [the prosecutor] stated
during his cross-examination were untrue?

 

[DEFENSE COUNSEL]:   
Specific response to your question  --

 

THE COURT:  That is
an attack on the lawyer, and you know that.

 

[DEFENSE COUNSEL]:   
No, I did not mean it that way.

 

THE COURT:  Well, it
certainly appears that way.

 

[DEFENSE COUNSEL]:   
Okay.  And I apologize, then, if that --

 

THE COURT:  Well,
then you --

 

[DEFENSE COUNSEL]:   
-- that’s how it came out.

 

THE COURT:  Then you
need to make an apology towards the

counsel.

 

[DEFENSE COUNSEL]:   And
I do.

 

THE COURT:  In front
of the jury.  

 

[DEFENSE COUNSEL]:   Okay.

 

THE COURT:  Because
they were left with the impression that he -- the witness was given false ifs
--

 

[DEFENSE COUNSEL]:   
I did not mean that.

 

THE COURT:  -- and
that is not correct, is it?

 

[DEFENSE COUNSEL]:   
No, absolutely not.

 

THE COURT:  All
right.  Now, what are you going to do to correct it?

 

[DEFENSE COUNSEL]:   
Well, I will most clearly say I didn’t -- meant no attack on him.  My thought
process was the jurors are the deciders of facts.  

 

THE COURT:  Correct. 
But as you understand --

 

[DEFENSE COUNSEL]:   
And --

 

THE COURT:  -- those
facts have been produced during the punishment phase and they are basically
unquestioned.  

 

[DEFENSE COUNSEL]:   
Right.

 

THE COURT:  All
right.

 

[DEFENSE COUNSEL]:   
As of now.

 

THE COURT:  Undisputed.

 

THE COURT:  Okay. 
Are -- do you have a good-faith belief that you’re going to dispute any of
those facts that you went into?

 

[DEFENSE COUNSEL]:  Time
sequence, a time sequence.

 

THE COURT:  Which
one?

 

[DEFENSE COUNSEL]:   
The day of the shooting.  Because I made the same mistake, too.  And then when
I started making a time chart, we were all under an assumption of the shooting
being on the 12th.  

 

THE COURT:  Okay.  So
it’s undisputed that she shot him; it’s undisputed that she changed -- she
modified the will; it is -- it is undisputed that this woman was under a
certain belief of certain parameters that he produced in the form of
cross-examination question [sic], which is true, correct?

 

[DEFENSE COUNSEL]:   
Uh-huh.

 

THE COURT:  Okay.  So
to say in the form of your question and leading the jury to say, and this
witness, that those things are not true.

 

[DEFENSE COUNSEL]:   Okay.
 I -- and after you brought it to my attention, I see how -- I was thinking one
track and it -- there’s two tracks there.  I do apologize to [the prosecutor]
because that was not my intent at all.

 

THE COURT:  Okay.

 

[DEFENSE COUNSEL]:   My
thought was -- and I will make this clear to the jury  --  my thought was that
until a jury decides those facts -- 

 

THE COURT:  I
understand that.  But what you’re saying is that he is lying.

 

[DEFENSE COUNSEL]:   
No.  No.

 

THE COURT:  All
right.

 

[DEFENSE COUNSEL]:   No.

 

THE COURT:  Is that
what you’re --

 

[PROSECUTOR]:  I’m --
I’m just saying that that’s an issue -- that’s an issue for the jury to decide
--

 

[DEFENSE COUNSEL]:   Exactly.

 

[PROSECUTOR]:  -- and
evidence.  So if she rephrases it in term of --

 

THE COURT:  You can
rephrase it, but the impression that you’re leaving, at least with the Court’s
mind, is that he’s misleading the witness.

 

[DEFENSE COUNSEL]:   
Okay.  Now, I did not do -- intend that at all.  And you know that.

 

[PROSECUTOR]:  
That’s fine.  

 

Defense counsel then continued her re-direct
examination of Garcia, which began with the following exchange:

Q.      Marti, when
-- when I asked you the last question about the fact or -- or -- or about
whether or not the hypothetical questions that -- or the questions that the
Prosecutor asked you --

 

A.      Uh-huh.  

 

Q.      -- and I said
that we do not know for sure that those are true at this point, do you
understand that what I meant was the facts of this case have not been
determined yet by the jury because there’s no verdict yet?

 

A.      Yes, because I
-- I didn’t know any of this stuff. So I’m still, she’s --

 

Q.      And  --

 

A.      -- innocent.

 

Q.      -- and you
don’t know any of that stuff?

 

A.      No.

 

Q.      All you know
is your questions?

 

A.      Yes.

 

Q.      Okay.  And
for the record, if there was the appearance of any attack on [the prosecutor],
I strongly apologize, because that was not my intent with -- what -- for the --
with the question.  He’s an excellent lawyer.  I’ve dealt with him before and
there was no intent to impune [sic] him or suggest in any way that he was lying
to you --

 

A.      Right.

 

Q.      --
okay?

 

A.      Yes.


 

III. 
Any Error Concerning Alleged Sustaining

of
State’s Objection Was not Preserved and Any Error was Harmless

 

In
her first issue, Jeffress complains that the trial court erred by implicitly sustaining
the State’s objection to defense counsel’s question to Garcia about the State’s
were-you-aware questions.  The record reflects, however, that the State did not
articulate any legal grounds for its objection; the trial court called a bench
conference before the prosecutor stated any legal grounds for the objection. 
The record also reflects that the trial court did not rule on the purported
objection.  Instead, the trial court told defense counsel that she could
rephrase the question.  

To
the extent that the trial court’s ruling that defense counsel could rephrase
the question may be construed as a ruling sustaining an incomplete objection by
the State, defense counsel nonetheless rephrased the question and the State did
not renew its objection.  Consequently, Jeffress was permitted in the rephrased
question to ask the question she desired to ask:  “[W]e do not know for sure
that those [the facts propounded in the were-you-aware questions] are true at
this point, do you understand that what I meant was the facts of this case have
not been determined yet by the jury because there’s no verdict yet?”    

Under
these circumstances, either error was not preserved because the record reflects
neither a legal basis for the State’s objection (making our review of any
ruling on the incomplete objection impossible) nor any ruling by the trial
court on the incomplete objection, or any error was harmless in any event
because Jeffress was able to rephrase the question and place before the jury
the desired information purportedly excluded via the State’s sustained
objection.  Accord Wright v. State, 28 S.W.3d 526, 534 (Tex.
Crim. App. 2000) (holding that “[a]lthough appellant is authorized to ask
proper questions in a particular area of inquiry, he is not entitled to ask
questions in any particular form”), cert. denied, 531 U.S. 1128 (2001); Baltazar
v. State, No. 08-02-00447-CR, 2004 WL 1078502, at *3 (Tex. App.—El Paso
2004, no pet.) (not designated for publication) (recognizing that when
defendant was able to rephrase questions in response to State’s objections and
thereby elicit the testimony he desired, no harm resulted from trial court’s
rulings on objections).  We overrule Jeffress’s first issue.

IV. 
No Objection to Request for Apology

 

In
her second issue, Jeffress complains that the trial court erred by requiring her
counsel to apologize to the prosecutor in front of the jury and that the
apology constituted an impermissible comment on the weight of the evidence.  The
record reflects that at the beginning of the bench conference, defense counsel apologized,
stating “I apologize, then, if that . . . that’s how it came out.”  When the trial
court told her she needed to apologize to the prosecutor, she did so.  When the
trial court told her it needed to be in front of the jury, she said “okay.”  Because
Jeffress did not object to the trial court’s instruction that her defense
counsel apologize to the prosecutor in front of the jury and her defense
counsel, in fact, agreed to do so, any error from this requirement imposed by
the trial court is not preserved for our review.  See Tex. R. App. P.
33.1(a)(1); Lovill v. State, 319 S.W.3d 687, 691–92 (Tex. Crim. App.
2009); see also Peavey v. State, 248 S.W.3d 455, 471 (Tex. App.—Austin
2008, pet ref’d) (holding that failure to timely assert comment-on-the-weight-of-the-evidence
objection preserves nothing for review).  Accordingly, we overrule her second
issue.

V.  Conclusion

Having
overruled Jeffress’s two issues, we affirm the trial court’s judgment.

 

 

PER CURIAM



PANEL: 
WALKER, GARDNER,
and MCCOY, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  February 16,
2012









[1]See Tex. R. App. P. 47.4.





[2]Section 3(a)(1) of article
37.07 of the Texas Code of Criminal Procedure provides, in part, that after a
finding of guilty, “evidence may be offered by the state and the defendant as
to any matter the court deems relevant to sentencing, including but not limited
to . . . an opinion regarding his character.”  Tex. Code Crim. Proc. Ann. art.
37.07, § 3(a)(1) (West Supp. 2011).  Furthermore, “a witness who testifies to a
defendant’s good character may be cross-examined to test the witness’s
awareness of relevant ‘specific instances of conduct.’” Wilson v. State,
71 S.W.3d 346, 350 (Tex. Crim. App. 2002) (citations omitted).