Opinion issued December
23, 2010



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00902-CR

———————————

Michael Gene Walker, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 351st District
Court

Harris County, Texas

Trial Court Case No. 1165264



 



 

MEMORANDUM OPINION

          Appellant, Michael Gene Walker, challenges
the trial court’s judgment adjudicating him guilty of the offense of possession
of child pornography and sentencing him to 10 years in prison.  Tex. Penal
Code Ann. § 43.26(a) (Vernon 2003). 
In two issues, appellant contends that the trial court erred in revoking
his deferred adjudication community supervision and in denying his motion for
shock probation.

          We affirm the trial court’s judgment
as modified.

Background


          Appellant pleaded guilty to the charged
offense of child pornography.  Pursuant
to the plea agreement, the trial court deferred adjudication of appellant’s
guilt and placed him on community supervision for six years.  The State later filed a motion to adjudicate
appellant’s guilt.  The State alleged
that appellant had violated the terms and conditions of his community
supervision by “[c]ommitting an offense against the State of Texas, to-wit: on
or about September 11, 2009, in Harris County, Texas, the Defendant did then
and there unlawfully operate[] a motor vehicle in a public place while
intoxicated.”  The State also alleged
that appellant had violated a condition of community supervision “by failing to
avoid persons or places of disreputable or harmful character.”

          The State presented a number of
witnesses at the adjudication hearing to support the State’s DWI allegation.  Lisa Maldinado testified that on September 11,
2009, she was sitting at a stop light in her truck when she was struck from
behind by a car driven by appellant.  It
was around 8:00 p.m.  Maldinado testified
that when he got out of his car, appellant could not walk and was stumbling.  Appellant told Maldinado that his foot had slipped
off of the brake pedal.  Although the
damage to her vehicle was minor, Maldinado testified that she called the police
because she thought appellant was drunk; she was concerned that he would hurt
someone else if he continued to drive.  

          Appellant got in his car and told Maldinado
that he wanted to move it to a safer place, specifically a nearby fast-food parking
lot.  To prevent him from moving his
vehicle, Maldinado stood in front of appellant’s car.  In spite of Maldinado’s actions, appellant
moved his car.  According to Maldinado,
appellant “was steadily coming right at me and trying to run me over with his
vehicle.”  Maldinado got out of the way,
and appellant drove his car to the parking lot. 

          Officer L.R. Menendez-Sierra with the
Houston Police Department was dispatched to the scene.  Officer Menendez-Sierra located appellant
standing next to his car in the restaurant parking lot.  As appellant walked toward him, Officer Menendez-Sierra
observed appellant swaying and staggering. 
Appellant told the officer, “I’m sorry. I dropped something on the
floorboard and I took my foot off the pedal and I hit them just a little bit.”  

          Upon questioning, appellant told the
officer that he had not been drinking. 
Officer Menendez-Sierra testified that he did not smell any alcohol on
appellant’s breath.  Appellant mentioned
to Officer Menendez-Sierra that he had taken medication.  Appellant told Officer Menendez-Sierra, “I
might have taken too much medication because I just got a new prescription.” 

          Officer Menendez-Sierra administered the
Horizontal Gaze Nystagmus (HGN) test to appellant.  Officer Menendez-Sierra observed that
appellant exhibited six out of six possible clues on the test.  Officer Menendez-Sierra testified that he
believed appellant was intoxicated.  Because
it did not appear that appellant had been drinking alcohol, Officer Menendez-Sierra
contacted dispatch to send a drug recognition expert to the scene.  

          In response to Officer Menendez-Sierra’s
call for assistance, Officer R. Farias was dispatched to the scene around 10:00
p.m.  Officer Farias testified that he is
a member of the DWI Task Force.  

          At the scene, appellant told Officer
Farias that he had not been drinking, but stated that he had taken three
medications that day: Klonopin, Depakote, and Zoloft.  Appellant told Officer Farias that he might
have over-medicated himself.  

          Officer Farias, who is NHTSA certified
to conduct field sobriety tests, administered field sobriety tests to
appellant, including the HGN, the walk-and-turn, and one-leg stand tests.  Appellant exhibited six out of six clues on
the HGN, six out of eight clues on the walk-and-turn, and three out of four
clues on the one-leg stand.  Officer
Farias testified that the results of the tests indicated to him that appellant
was impaired.  

          Officer Farias also had appellant
recite the alphabet from D to X to determine whether his mental faculties were
impaired.  Officer Farias testified that
appellant was unable to accurately recite the alphabet in the manner the
officer had instructed.  This indicated
to Officer Farias that appellant “had lost some of his mental faculties.”  

          Officer Farias also observed appellant
staggering and stumbling at the scene. 
He testified that appellant was “unsteady at best.”  Based on his training and experience, Officer
Farias formed the opinion that appellant was intoxicated.  Officer Farias transported appellant to the
police station.

          Officer R. Montelongo, Jr. was working
at the police station that night.  Officer
Montelongo is also assigned to the DWI Task Force.  With regard to his training, Officer
Montelongo testified that he had attended “DWI school,” “intoxilyzer school,”
and “drug recognition expert school.”  According
to Officer Montelongo, appellant was offered the opportunity to take a breath
or blood test to determine his impairment level but refused.  Appellant told Officer Montelongo that he had
taken Klonopin, Depakote, and Zoloft. 
Officer Montelongo testified that he saw appellant’s written
prescriptions for these medications. 
Appellant told the officer that he had over-medicated.  A video was also made of appellant at the
station, which was shown at the adjudication hearing. 

          At around midnight, Officer Montelongo
administered the HGN test to appellant. 
He testified that appellant exhibited all six clues.  Officer Montelongo also noted that, upon
testing, appellant’s eyes were not able to “converge” as they should.  Officer Montelongo testified that he was not
able to conduct a drug recognition evaluation on appellant without first
determining that alcohol was not in appellant’s system.  Alcohol could not be eliminated because
appellant had refused the breath and blood testing.  

          Officer Montelongo testified that
appellant did not have the normal use of his mental or physical faculties.  Based on his observations, Officer Montelongo
formed the opinion that appellant was impaired and intoxicated on drugs.  

          In support of his defense, appellant
offered the testimony of his psychiatrist, Dr. Frank Chen.  The doctor testified that appellant had been
diagnosed with major depressive disorder, generalized anxiety disorder, and
obsessive compulsive personality disorder traits.  To treat these issues, Dr. Chen had
prescribed Klonopin, Depakote, and Zoloft. 


          The doctor testified that he had given
appellant a free sample of Depakote two days before the accident.  He confirmed that the samples he gave his
patients had written warnings included in the packaging.  Dr. Chen stated that appellant took Depakote
for impulse control.  The doctor stated
that appellant was very concerned about losing control of his emotions.  Dr.
Chen testified that Depakote can have cognitive side effects such as disorientation,
confusion and dizziness.  Klonopin also
has cognitive side effects.

          Dr. Chen explained that he had increased
appellant’s dosage of Zoloft two days before the accident.  Dr. Chen did not increase the dosage of
appellant’s other two medications.  The
doctor confirmed that it is possible to experience side effects from the
medication when the dosage is increased even though the person had not
previously experienced side effects.

          Dr. Chen testified that he warns his
patients of the side effects of the medication he prescribes.  With regard to Zoloft, he warns his patients
that the side effects can be nausea, vomiting, headache, diarrhea, and
worsening of anxiety.  Dr. Chen testified
that a less common side effect of Zoloft is drowsiness, which occurs in
approximately 10 percent of persons taking it. 


          When asked on cross-examination what
he thought someone would mean if they said that they had “overmedicated,” Dr.
Chen stated that to him it meant that the person had taken more medication than
prescribed.  

          Appellant also testified at the
adjudication hearing.  He confirmed that
his car had hit the back of Maldonado’s car while stopped at a red light.  Appellant claimed that his foot had slipped
off the brake while he was trying to pick up some papers from the
floorboard.  

          Appellant stated that he had taken Zoloft
in the morning, Klonopin midday, and then had taken another Kloponin and Depakote
in the afternoon.  Appellant agreed that
the video of him at the police station showed that he was not physically in a
condition that a person should be to drive a car.  Appellant admitted that he felt the same side
effects at the time of the accident as he observed in the video.  

          Appellant’s testimony indicated that
he believed that he was impaired that night because of the increased dosage in
medicine.  He had never become impaired
before his dosage of Zoloft was increased. 
Appellant claimed that he would not have gotten in his car to drive that
night if he had realized that he was impaired. 

          On cross-examination, appellant stated
that he believed that he was more impaired at the time the video was taken—four
hours after the accident—because there would have been “additional effects of
the drugs” that he had taken later in the day.  Appellant also agreed that the term
overmedicate indicates that he had taken more medicine than the doctor had
prescribed.  

          On re-direct, appellant denied taking his
medicine in a manner that deviated from that prescribed by Dr. Chen.  He testified that he believed that taking the
Kloponin and Depakote in the afternoon together could have impaired him.  Appellant testified that he normally took the
medications separately.  Appellant
reiterated that he did not realize that he was impaired while he was driving on
the night of the accident.

          Aside from the testimony regarding the
DWI charge, evidence was also presented to support the State’s allegation that
appellant had failed to avoid persons or places of disreputable or harmful
character.  Appellant’s probation officer
testified that a member of a therapy group appellant had attended contacted her
to report that appellant had spoken to him outside of the group setting.  Appellant did not deny that he had done this,
but testified that it was not clear to him that he could not have such
contact.  Appellant claimed that, at the
time he had made the contact, he was not aware that it was not appropriate.  He stated that other group members had communicated
outside of the group setting.  Appellant
testified that, at the time of the hearing, he realized that it is forbidden
for therapy participants to have contact with one another outside of group therapy.  

          At the end of the adjudication
hearing, the trial court stated, 

[F]or the record,
I find [appellant’s] Mr. Walker’s testimony regarding the DWI allegation not to
be credible.  Upon that, I’m going to
find the first allegation of the DWI law violation to be true.  I’m going to find the second violation
regarding associating with a disreputable, harmful person or person of that
character, I’m going to find that to be true. . . .  

 

          Upon that, I’m going to find you
guilty of possession of child pornography and revoke your probation.  

 

          The
trial court then conducted the punishment phase.  The trial court sentenced appellant to 10
years in prison.  

          Nearly
six months after the trial court signed its judgment adjudicating his guilt,
appellant filed a motion for shock probation. 
The trial court denied the motion the same day that it was filed.

          Appellant
appeals the trial court’s judgment raising two issues.

Adjudication
of Guilt

          In his
first issue, appellant contends that the trial court abused its discretion in adjudicating
him guilty because the evidence was insufficient to show that he violated the
terms and conditions of his community supervision.

A.      Standard
of Review

          A trial court’s determination on a
motion to adjudicate is reviewable in the same manner as a determination of a
motion to revoke community supervision. Tex.
Code Crim. Proc. Ann. art. 42.12, § 5(b) (Vernon Supp. 2010).  A revocation proceeding is neither criminal
nor civil in nature; rather, it is an administrative proceeding.  Canseco
v. State, 199 S.W.3d 437, 438 (Tex. App.—Houston [1st Dist.] 2006, pet. ref’d).
 At a revocation hearing, the State must
prove by a preponderance of the evidence that the defendant has violated a
condition of his community supervision.  Id. at 438–39.  Proof of a single violation is sufficient to
support a revocation.  Id. at 439.

          Appellate review of an order revoking community
supervision is limited to abuse of the trial court’s discretion.  Rickels
v. State, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006.  We view the evidence in the light most
favorable to the trial court’s judgment.  Canseco,
199 S.W.3d at 439.  The trial court is
the exclusive judge of the credibility of the witnesses and must determine
whether the allegations in the motion to revoke are sufficiently demonstrated.  Id.

B.      Analysis

          Appellant contends that the trial
court abused its discretion when it found that he violated the terms of his
community supervision by committing the offense of driving while intoxicated.  We disagree.

          To establish the offense of driving
while intoxicated, the State must prove the defendant was intoxicated while
operating a motor vehicle in a public place. Tex.
Penal Code Ann. § 49.04(a) (Vernon 2003); Stoutner v. State, 36 S.W.3d 716, 721 (Tex. App.—Houston [1st
Dist.] 2001, pet. ref’d).  The Penal Code
defines “intoxicated” as (1) “not having the normal use of mental or physical
faculties by reason of the introduction of alcohol, a controlled substance, a
drug, a dangerous drug, a combination of two or more of those substances, or
any other substance into the body,” or (2) “having an alcohol concentration of
0.08 or more.”  Tex. Penal Code Ann. § 49.01(2) (Vernon 2003).

          Appellant offers two arguments to show
that the trial court abused its discretion when it found, by a preponderance of
the evidence, that appellant had committed the offense of driving while
intoxicated.  Appellant does not argue
that the evidence failed to show he was intoxicated.  Indeed, as discussed above, there is ample
evidence in the record showing that appellant’s physical and mental faculties
were impaired that night.  Instead, appellant
first argues that the State failed to establish the offense because the
evidence does not show “the manner and means” by which appellant became
intoxicated.  

          Significantly, the substance that
causes intoxication is not an element of driving while intoxicated, see Tex.
Penal Code Ann. § 49.04(a), and thus, the State can prove intoxication
without proof of the type of intoxicant, see
Gray v. State, 152 S.W.3d 125, 132 (Tex. Crim. App. 2004).  Here, the evidence showed that appellant had
taken Klonopin, Depakote, and Zoloft on the day of accident.  Appellant testified that, late in the
afternoon, he had taken Klonopin and Depakote at the same time.  He testified that he normally did not take
the two drugs together.            The State presented testimony that appellant
admitted to the police officers that he had overmedicated himself.  The witnesses, including appellant and his
psychiatrist, agreed that the term “overmedicated” indicates that more
medication was taken than had been prescribed. 
Even though appellant testified that he had taken the medication as
prescribed, the trial court was free to disbelieve appellant’s testimony in
this regard.  See Casey v. State, 519 S.W.2d 859, 861 (Tex. Crim. App. 1975) (explaining
that as the trier of fact in a revocation hearing, trial court is the sole
judge of the credibility of the witnesses and the weight to be given their
testimony; trial court may accept or reject all or any part of witnesses’
testimony).

          Moreover, the evidence showing that
appellant was unsteady on his feet and performed poorly on the sobriety tests
is circumstantial evidence indicating that appellant’s intoxication resulted
from his ingestion of medication, which he admitted to have taken several times
that day, including late in the afternoon.  In short, the record contains ample evidence
from which the trial court could have inferred that appellant’s intoxication
resulted from his ingestion of the prescription medication. 

          Appellant also contends that he
“proved that he was involuntarily intoxicated due to prescription drugs.”  Appellant argues that his intoxication
resulted from Dr. Chen’s increasing of the dosage of his Zoloft two days
earlier.  Appellant contends that he took
the increased dosage as prescribed without knowledge that it would cause him to
lose control of his physical and mental faculties.  

          Texas courts have held that
involuntary intoxication is not a defense to DWI because the offense of DWI
does not require a culpable mental state. 
See, e.g., Brown v. State, 290 S.W.3d 247, 250
(Tex. App.—Fort Worth 2009, pet. ref’d); Stamper
v. State, No. 05-02-01730-CR, 2003 WL 21540414, at *1 (Tex. App.—Dallas
July 9, 2003, no. pet.) (mem. op., not designated for publication) (emphasizing
that involuntary intoxication is not defense to DWI and that correct defense is
involuntary act); Bearden v. State,
No. 01-97-00900-CR, 2000 WL 19638, at *4 (Tex. App.—Houston [1st Dist.] Jan.
13, 2000, pet. ref’d) (not designated for publication) (declining to extend involuntary
intoxication defense to offense of driving while intoxicated); Aliff v. State, 955 S.W.2d 891, 893
(Tex. App.—El Paso 1997, no pet.) (holding that proof of culpable mental state
is not required for DWI conviction, thus, involuntary intoxication cannot be defense
to such charge).  Moreover, the voluntary
taking of prescription drugs, which impair mental or physical faculties, is not
a defense to DWI.[1]  Tex.
Penal Code Ann. § 49.10 (Vernon Supp. 2010).  

          In any event, the evidence in this
case supports a finding by the trial court that appellant voluntarily took an
intoxicant for which he was aware of the side effects or which he did not take
as prescribed.  The evidence showed that
appellant admitted to the police officers that he had overmedicated himself
that day.  Dr. Chen testified that he
warns his patients of the side effects of the medication.  

          As he points out, appellant testified
that he took the medication as prescribed and that he was not aware of his
impairment when he got in his car. 
Nonetheless, the trial court was free to disbelieve appellant’s
testimony in these respects.  Casey, 519 S.W.2d at 861.

          We conclude that the record supports
the trial court’s finding that appellant had violated the terms and conditions
of his community supervision by committing the offense of driving while
intoxicated.[2]   We hold that the trial court did not abuse
its discretion in revoking appellant’s community supervision and adjudicating
his guilt.  See Rickels, 202 S.W.3d at 763–64. 


          We overrule appellant’s first issue.

Modification
of Judgment

          As mentioned, the trial court stated
on the record that it found to be true the State’s allegations that appellant
violated the terms and conditions of his community supervision by committing
the DWI offense and by failing
to avoid persons of disreputable character. 
The trial court’s judgment recites that the court found that appellant violated his community supervision by
committing an offense against the laws of the State of Texas.  The judgment did not recite that the trial
court found that appellant had violated his community supervision terms by failing
to avoid persons of disreputable character. 
The State requests that we modify the judgment to reflect that the trial
court’s finding regarding appellant’s association with person of disreputable
character 

          When there is a conflict between the trial
court’s oral pronouncement of the findings supporting revocation and the
written judgment, the oral pronouncement controls.  See
Smith v. State, 290 S.W.3d 368, 377 (Tex. App.—Houston [14th Dist.] 2009,
pet. ref’d) (citing Thompson v. State,
108 S.W.3d 287, 290 (Tex. Crim. App. 2003)).  We may modify the trial court’s written
judgment to correct such a clerical error when we have the necessary
information before us to do so.  See Tex.
R. App. P. 43.2(b); Bigley v.
State, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); Asberry v. State, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991,
pet. ref’d). Accordingly, we modify the judgment to show that appellant also violated
the terms and conditions of his community supervision by failing to avoid
persons or places of disreputable or harmful character.  See
Tex. R. App. P. 43.2(b); see also Smith, 290 S.W.3d at 377
(modifying order of adjudication to include trial court’s oral pronouncement
that defendant violated six conditions of his deferred adjudication); Smith v. State, 790 S.W.2d 366, 368
(Tex. App.—Houston [1st Dist.] 1990, pet. ref’d) (modifying order revoking probation
to include trial court’s oral pronouncement that defendant failed to maintain
employment).

 

Shock
Probation

          In his
second issue, appellant contends that the trial court erred in denying his
motion for shock probation.  

          Section 6(a) of article 42.12 of the
Code of Criminal Procedure governs shock probation.  That section provides:

For the purposes of this section, the jurisdiction
of a court in which a sentence requiring imprisonment in the institutional
division of the Texas Department of Criminal Justice is imposed by the judge of
the court shall continue for 180 days from the date the execution of the sentence
actually begins.  Before the expiration
of 180 days from the date the execution of the sentence actually begins, the
judge of the court that imposed such sentence may on his own motion, on the
motion of the attorney representing the state, or on the written motion of the
defendant, suspend further execution of the sentence and place the defendant on
community supervision under the terms and conditions of this article, if in the
opinion of the judge the defendant would not benefit from further imprisonment
and:

 

(1) the defendant is
otherwise eligible for community supervision under this article; and

 

(2) the defendant had never
before been incarcerated in a penitentiary serving a sentence for a felony.

 

Tex. Code Crim. Proc. Ann. art. 42.12, § 6 (Vernon Supp. 2010).
 

          Here, appellant filed a motion for
shock probation less than 180 days after the trial court signed the judgment
adjudicating guilt.  In the motion, appellant
asserted that he was no longer a danger to society and that he had been
truthful when he testified that he had not intentionally or knowingly
overmedicated himself.  In support of his
claim of truthfulness, appellant attached a report from a polygraph examiner
reporting the results of a polygraph test appellant had taken.  

          Appellant asserts that the trial court
abused its discretion in denying his motion for shock probation because the
motion addressed the trial court’s concerns expressed at the adjudication
hearing and because the polygraph examiner found him to be truthful.  

          The language of article 42.12, section
6 makes clear that the decision whether to grant shock probation is committed
to the discretion of the trial court.  See id. 
It is not mandatory. 
Moreover, as the trier of fact in a revocation hearing, the trial court
is the sole judge of the credibility of the witnesses and the weight to be
given their testimony.  Casey, 519 S.W.2d at 861.  The trial court may accept or reject all or
any part of a witness’s testimony.  Id. 
It was the trial court’s prerogative to disbelieve appellant, in spite
of the polygraph examination.  See id.; see also Nesbit v. State, 227 S.W.3d 64, 66 n.4 (Tex. Crim. App. 2007)
(recognizing general rule that results of polygraph test are not admissible in
a Texas criminal proceeding).  

          Appellant has not shown that the trial
court abused its discretion in denying his motion for shock probation. 

          We overrule appellant’s second issue.

 

Conclusion

          The judgment of the trial court is
affirmed as modified. 

 

 

                                                                   Laura
Carter Higley

                                                                    Justice 

 

Panel consists of Justices Keyes, Higley, and Bland.

Do not publish.   Tex. R.
App. P. 47.2(b).











[1]
          Several courts of appeals have, however,
considered an involuntary act, i.e., automatism, as a defense to DWI.  See,
e.g., Peavey v. State, 248 S.W.3d 455, 465 (Tex. App.—Austin 2008, pet.
ref’d) (discussing automatism as a defense to DWI); see also Stamper v. State, No. 05-02-01730-CR, 2003 WL 21540414, at
*1 (Tex. App.—Dallas July 9, 2003, no. pet.) (mem. op., not designated for
publication) (recognizing that appellant incorrectly argued involuntary
intoxication when she should have argued involuntary act); Waters v. State, No. 01-96-00631-CR, 2001 WL 754759, at *3 (Tex.
App.—Houston [1st Dist.] June 29, 2001, no pet.) (not designated for
publication) (analyzing whether appellant voluntarily became intoxicated).

 





[2]
          Because this ground supports the
trial court’s judgment, we do not reach appellant’s other challenge in which he
argues that the trial court’s finding that he violated the terms of his
community supervision by failing to avoid persons or places of disreputable or
harmful character.  See Moore v. State, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980)
(explaining that single ground supporting trial court’s action ends inquiry
into appellant’s challenge); Canseco v.
State, 199 S.W.3d 437, 439 (Tex. App.—Houston [1st Dist.] 2006, pet. ref’d).