

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-10-00492-CR

PATRICIA ANN JEFFRESS                                                      APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

----------

### FROM THE 432ND DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Patricia Ann Jeffress appeals her conviction for murder. In two issues, Jeffress claims that the trial court erred by sustaining the State's objections during her redirect examination of a defense character witness and by requiring her counsel to apologize to the prosecutor in the presence of the jury. We will affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Jeffress shot and killed her husband, Joe Bob Jeffress, Sr., while he slept. She pleaded guilty before the jury and the trial court proceeded to the punishment phase of trial. The jury assessed Jeffress's punishment at sixty-five years' confinement, and the trial court sentenced her accordingly.

During the punishment phase of Jeffress's trial, defense counsel called Jeffress's hairdresser, Martha "Marti" Garcia, to testify as a character witness for the defense. On direct examination, Garcia testified that she met Jeffress about one year before the murder when Jeffress came into her salon. Garcia testified that she cut Jeffress's hair three or four times during that year and that Jeffress had also introduced her to Joe. Garcia testified that Jeffress came to the salon one day to tell her that she had killed Joe. Garcia testified on direct examination that, in her opinion, Jeffress was a "wonderful," "kind and sweet" person who was "trying hard to . . . stay in her marriage" and that Jeffress seemed "joyous" on the outside but had "sorrow" and "pain" on the inside.

On cross-examination, the State attempted to impeach Garcia's characterization of Jeffress by asking Garcia a series of "were you aware" questions.[2] Specifically, the State asked Garcia if she was aware that before

---

[2]Section 3(a)(1) of article 37.07 of the Texas Code of Criminal Procedure provides, in part, that after a finding of guilty, "evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to . . . an opinion regarding his character." Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West Supp. 2011). Furthermore, "a witness who testifies to a defendant's good character may be cross-examined to

Jeffress killed Joe, Joe had told Jeffress that he was "okay" with her leaving and divorcing him and that Jeffress had searched the Internet for freezers large enough to hold Joe's body, for a company called "US Cold Storage," which stores and transports large meats, and for information on whether lime would kill bacteria. The State also asked Garcia if she was aware that after Jeffress had killed Joe, Jeffress purchased a large freezer and attempted to put Joe's body in the freezer, liquidated stock held in Joe's Ameritrade account, attempted to modify Joe's will to exclude his only son as a beneficiary and name herself as the sole beneficiary, and attempted to have the modified will notarized. To each of these questions, Garcia answered that she was unaware of the facts stated by the prosecutor.

On redirect examination, Jeffress's defense counsel asked Garcia the following:

Q.     Marti, you understand that those are just questions?

A.     Yes.

Q.     They're ifs, right?

A.     (Moving head up and down).

Q.     We don't know for sure how much of -- of that is accurate at this point?

A.     Yes.

---

test the witness's awareness of relevant 'specific instances of conduct.'" *Wilson v. State*, 71 S.W.3d 346, 350 (Tex. Crim. App. 2002) (citations omitted).

3

Q.      Okay.

[THE PROSECUTOR]:  Judge, I'm going to object.  That's evidence that's been tendered in this particular case and that's . . . .

Before the prosecutor could complete his objection, the trial court called the prosecutor and defense counsel to a bench conference.

During the bench conference, the following exchange occurred:

THE COURT:  [Defense counsel] would you please tell me if --

[DEFENSE COUNSEL]: I --

THE COURT:  Let me finish.  Would you please tell me what items that [the prosecutor] stated during his cross-examination were untrue?

[DEFENSE COUNSEL]:  Specific response to your question  --

THE COURT:  That is an attack on the lawyer, and you know that.

[DEFENSE COUNSEL]:  No, I did not mean it that way.

THE COURT:  Well, it certainly appears that way.

[DEFENSE COUNSEL]:  Okay.  And I apologize, then, if that --

THE COURT:  Well, then you --

[DEFENSE COUNSEL]:   -- that's how it came out.

THE COURT:  Then you need to make an apology towards the counsel.

[DEFENSE COUNSEL]: And I do.

THE COURT:  In front of the jury.

[DEFENSE COUNSEL]: Okay.

4

THE COURT:  Because they were left with the impression that he -- the witness was given false ifs --

[DEFENSE COUNSEL]:  I did not mean that.

THE COURT:  -- and that is not correct, is it?

[DEFENSE COUNSEL]:  No, absolutely not.

THE COURT:  All right.  Now, what are you going to do to correct it?

[DEFENSE COUNSEL]:  Well, I will most clearly say I didn't -- meant no attack on him.  My thought process was the jurors are the deciders of facts.

THE COURT:  Correct.  But as you understand --

[DEFENSE COUNSEL]:  And --

THE COURT:  -- those facts have been produced during the punishment phase and they are basically unquestioned.

[DEFENSE COUNSEL]:  Right.

THE COURT:  All right.

[DEFENSE COUNSEL]:  As of now.

THE COURT:  Undisputed.

THE COURT:  Okay.  Are -- do you have a good-faith belief that you're going to dispute any of those facts that you went into?

[DEFENSE COUNSEL]:  Time sequence, a time sequence.

THE COURT:  Which one?

[DEFENSE COUNSEL]:  The day of the shooting.  Because I made the same mistake, too.  And then when I started making a time chart, we were all under an assumption of the shooting being on the 12th.

THE COURT:  Okay.  So it's undisputed that she shot him; it's undisputed that she changed -- she modified the will; it is -- it is

5

undisputed that this woman was under a certain belief of certain parameters that he produced in the form of cross-examination question [sic], which is true, correct?

[DEFENSE COUNSEL]: Uh-huh.

THE COURT: Okay. So to say in the form of your question and leading the jury to say, and this witness, that those things are not true.

[DEFENSE COUNSEL]: Okay. I -- and after you brought it to my attention, I see how -- I was thinking one track and it -- there's two tracks there. I do apologize to [the prosecutor] because that was not my intent at all.

THE COURT: Okay.

[DEFENSE COUNSEL]: My thought was -- and I will make this clear to the jury -- my thought was that until a jury decides those facts --

THE COURT: I understand that. But what you're saying is that he is lying.

[DEFENSE COUNSEL]: No. No.

THE COURT: All right.

[DEFENSE COUNSEL]: No.

THE COURT: Is that what you're --

[PROSECUTOR]: I'm -- I'm just saying that that's an issue -- that's an issue for the jury to decide --

[DEFENSE COUNSEL]: Exactly.

[PROSECUTOR]: -- and evidence. So if she rephrases it in term of --

THE COURT: You can rephrase it, but the impression that you're leaving, at least with the Court's mind, is that he's misleading the witness.

6

[DEFENSE COUNSEL]: Okay. Now, I did not do -- intend that at all. And you know that.

[PROSECUTOR]: That's fine.

Defense counsel then continued her re-direct examination of Garcia, which began with the following exchange:

Q. Marti, when -- when I asked you the last question about the fact or -- or -- or about whether or not the hypothetical questions that -- or the questions that the Prosecutor asked you --

A. Uh-huh.

Q. -- and I said that we do not know for sure that those are true at this point, do you understand that what I meant was the facts of this case have not been determined yet by the jury because there's no verdict yet?

A. Yes, because I -- I didn't know any of this stuff. So I'm still, she's --

Q. And --

A. -- innocent.

Q. -- and you don't know any of that stuff?

A. No.

Q. All you know is your questions?

A. Yes.

Q. Okay. And for the record, if there was the appearance of any attack on [the prosecutor], I strongly apologize, because that was not my intent with -- what -- for the -- with the question. He's an excellent lawyer. I've dealt with him before and there was no intent to impune [sic] him or suggest in any way that he was lying to you --

A. Right.

7

Q. -- okay?

A. Yes.

### III. ANY ERROR CONCERNING ALLEGED SUSTAINING OF STATE'S OBJECTION WAS NOT PRESERVED AND ANY ERROR WAS HARMLESS

In her first issue, Jeffress complains that the trial court erred by implicitly sustaining the State's objection to defense counsel's question to Garcia about the State's were-you-aware questions. The record reflects, however, that the State did not articulate any legal grounds for its objection; the trial court called a bench conference before the prosecutor stated any legal grounds for the objection. The record also reflects that the trial court did not rule on the purported objection. Instead, the trial court told defense counsel that she could rephrase the question.

To the extent that the trial court's ruling that defense counsel could rephrase the question may be construed as a ruling sustaining an incomplete objection by the State, defense counsel nonetheless rephrased the question and the State did not renew its objection. Consequently, Jeffress was permitted in the rephrased question to ask the question she desired to ask: "[W]e do not know for sure that those [the facts propounded in the were-you-aware questions] are true at this point, do you understand that what I meant was the facts of this case have not been determined yet by the jury because there's no verdict yet?"

Under these circumstances, either error was not preserved because the record reflects neither a legal basis for the State's objection (making our review

8

of any ruling on the incomplete objection impossible) nor any ruling by the trial court on the incomplete objection, or any error was harmless in any event because Jeffress was able to rephrase the question and place before the jury the desired information purportedly excluded via the State's sustained objection. *Accord Wright v. State*, 28 S.W.3d 526, 534 (Tex. Crim. App. 2000) (holding that "[a]lthough appellant is authorized to ask proper questions in a particular area of inquiry, he is not entitled to ask questions in any particular form"), *cert. denied*, 531 U.S. 1128 (2001); *Baltazar v. State*, No. 08-02-00447-CR, 2004 WL 1078502, at *3 (Tex. App.—El Paso 2004, no pet.) (not designated for publication) (recognizing that when defendant was able to rephrase questions in response to State's objections and thereby elicit the testimony he desired, no harm resulted from trial court's rulings on objections). We overrule Jeffress's first issue.

## IV. NO OBJECTION TO REQUEST FOR APOLOGY

In her second issue, Jeffress complains that the trial court erred by requiring her counsel to apologize to the prosecutor in front of the jury and that the apology constituted an impermissible comment on the weight of the evidence. The record reflects that at the beginning of the bench conference, defense counsel apologized, stating "I apologize, then, if that . . . that's how it came out." When the trial court told her she needed to apologize to the prosecutor, she did so. When the trial court told her it needed to be in front of the jury, she said "okay." Because Jeffress did not object to the trial court's

9

instruction that her defense counsel apologize to the prosecutor in front of the jury and her defense counsel, in fact, agreed to do so, any error from this requirement imposed by the trial court is not preserved for our review. *See* Tex. R. App. P. 33.1(a)(1); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009); *see also Peavey v. State*, 248 S.W.3d 455, 471 (Tex. App.—Austin 2008, pet ref'd) (holding that failure to timely assert comment-on-the-weight-of-the-evidence objection preserves nothing for review). Accordingly, we overrule her second issue.

## V. CONCLUSION

Having overruled Jeffress's two issues, we affirm the trial court's judgment.

PER CURIAM

PANEL: WALKER, GARDNER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: February 16, 2012