

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-22-00006-CR
_____

WILLIAM CHARLES GATEWOOD, JR., Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 5th District Court
Bowie County, Texas
Trial Court No. 21F0801-005

Before Morriss, C.J., Stevens and van Cleef, JJ.
Opinion by Chief Justice Morriss

# O P I N I O N

On a November morning in 2020, Officer Aaron Jones of the Texarkana, Texas, Police Department responded to a report of a burglary in progress and witnessed the bizarre scene of William Charles Gatewood, Jr., partially naked, sitting on his porch, and yelling. The incident developed into violence by Gatewood, with multiple officers involved at the scene. Ultimately, Gatewood, despite his claim of involuntary intoxication, was indicted for the felony offense of burglary of his neighbor's habitation with intent to commit, with an attempt to commit, or having committed aggravated assault. In a jury trial, Gatewood was convicted and sentenced to eight years in prison.

In a single point of error, Gatewood argues that the evidence was legally insufficient to support the jury's adverse finding on his affirmative defense of involuntary intoxication. We affirm the trial court's judgment because more than a scintilla of evidence supported the jury's adverse finding.

Here is the narrative in detail. On the fateful morning, Gatewood awoke and smoked what he believed to be a typical tobacco cigarette that he had found in a nearby ashtray. After smoking the cigarette, Gatewood took off his clothes and shaved his fingers until he was bleeding, because he believed that "stuff [was] crawling" out of his hands and body. Gatewood believed that, unbeknownst to him, the cigarette he smoked contained K2 synthetic marihuana. He claimed to have no memory of what happened from that point until after the police and emergency services arrived. He said he did not know how he arrived at his neighbor's house, what happened when he got there, or "how it happened."

Martha Williams, Gatewood's neighbor from across the street, testified that, on that occasion, she saw a naked Gatewood in her backyard, looking at her shed and hot tub. She saw him leave her backyard and then come back with what she believed was a baseball bat. She testified that Gatewood struck the hot tub cover with the object, broke down her backdoor, and "came in the house." Williams called Larry Rose, Gatewood's nearby landlord, for help. Her grandson, Victor Owens, confronted Gatewood and told him to leave. As Owens tried to calm the agitated Gatewood, they both left the house through the front door. After exiting the house, Owens fell to the ground, and Gatewood got on top of Owens and started striking him with the flat, blunt side of an ax. Rose testified that he "ran up there and got a hold of Williams's shoulder and . . . said, 'William, quit or you're going to kill him.'" Gatewood quit immediately. Gatewood returned to his house, where he stayed until the police arrived.

Officer Jones was called to the scene about 7:30 a.m. When he arrived, Gatewood was naked, partially covered by a sweatshirt, and sitting on his porch. Gatewood was "steadily yelling[ and] screaming" about a woman who was allegedly at his neighbor's house and whom Gatewood wanted the officer to bring back to Gatewood's house. There was an ax lying at Jones's feet, and Jones threw it off the porch into the yard. Jones testified that he was unable to calm Gatewood, and another officer, Thomas Shaddix, stepped in for Jones, who then went back across the street to Williams's house to gather more information.

Shaddix testified that, while Jones was across the street, Gatewood "began to escalate again," told Shaddix to move off of his porch, threatened the officer, shoved Shaddix, and assumed a "fighting stance." Shaddix then shot Gatewood with two JPX rounds, "a less-lethal

3

weapon" akin to pepper spray. Shaddix arrested Gatewood, placed him in a patrol car, and arranged for LifeNet emergency services to meet them at the jail to provide treatment to Gatewood for the effects of the JPX rounds. Jones testified that, despite Gatewood's strange behavior, they did not attempt to obtain a blood or urine sample for drug testing.

Recordings from two officers' body cameras were admitted into evidence and played for the jury. The recordings show Gatewood yelling about bugs being on him, about a woman who cheated on him with the neighbor across the street, and about how he wanted the officer to retrieve the woman from the neighbor's house. In the videos, Gatewood threatened to kill Victor Owens, pointed across the street, and admitted to "beating his ass" earlier, lamenting the fact that he did not kill him. Gatewood did not claim to remember the events shown in the recordings, but he was "embarrassed" by the videos because, he said, "It's not me."

Gatewood claimed that, after smoking the cigarette that morning, he blacked out, and the next thing he remembered was riding in the police car. When asked about his actions and what might have caused them, Gatewood testified that one of his co-workers, identified only as Junior, had been at his house recently. Junior smoked K2, and "he had to have left [a K2 cigarette] in [the] ashtray." Another of Gatewood's co-workers, Billy Hill, was frequently at Gatewood's house, and he "always" rerolled the cigarette butts in his ashtray into new cigarettes. Gatewood believed that Hill had rerolled one of Junior's K2 cigarettes into a new cigarette and left it in the ashtray, that he (Gatewood) accidentally smoked that cigarette, and that the effects of K2 caused the incident.

4

Gatewood testified that Owens was his friend.  He testified, and Owens agreed, that they remained friends after the incident in this case.  Gatewood testified that, since the incident, the two of them had gone grocery shopping together, Owens had taken him to the "scale a couple of times to take scraps," and Owens brought him a couple of beers just days before the trial.

Rose, who said he knew Gatewood very well, testified that Gatewood's actions were out of character for him because he was "normally quite a gentleman, really, really a nice guy." Owens agreed, testifying that the Gatewood who attacked him "did not appear to be the same Mr. Gatewood [that he knew]."  Owens believed that Gatewood had "ingested" something that morning because hitting someone with an ax "was not the act of a man in his right mind."

Gatewood claimed that nothing like this had ever happened to him before.  However, on cross-examination, Gatewood admitted that several similar incidents had occurred in the recent past:

- Gatewood acknowledged that, in 2019, the police were called to the home of Sandra Phillips, another of his neighbors, because he was banging on her door with a knife in his hand, saying that people were after him.  He admitted that he was arrested for "public intoxication" after the event.

- Gatewood admitted that, in 2020, he had been arrested twice for assaulting his girlfriend, but he claimed that they were "fictitious charges," and he testified that he had not been convicted of any crime arising from those arrests.

- Gatewood confirmed that, in May 2021, while he was out on bond for the underlying charge in this case, police were again called when he was "swinging a water ski" in front of his mother's house.  He claimed that he was protecting himself because "[p]eople were after [him]," but Officer Jones testified that Gatewood was "screaming and yelling at the top of his lungs" and "trying to fight people that weren't there." Jones arrested Gatewood and found in his possession a pipe and what he believed to be methamphetamine.  Gatewood admitted that the police arrested him for possession of a controlled substance.

5

- Gatewood acknowledged that, in May 2021, he was walking around the neighborhood with a "large stick" when he was arrested again, but he testified that he was the one who called the police.

- Gatewood admitted that he was arrested for trespassing two months later, in July of 2021, for entering a different neighbor's house "unannounced," but he claimed that he was "running from people" and that he had been "knocking on the door for help."

Gatewood consistently denied that he was intoxicated during these previous events. Gatewood testified that he had been diagnosed with schizophrenia and was prescribed Seroquel to treat it, but that he did not take the medication on the day in question. He stated, "At that time, I was on a mood stabilizer and a depression pill."[1] He testified that he suffered from delusions that people were "after" him, that "something was going to happen," and that he had to protect himself.

Throughout the trial, Gatewood argued that he was not guilty because he was involuntarily intoxicated by K2 at the time of the events at issue.[2] In connection with that defense, the jury was charged, in part, as follows:

> Involuntary intoxication is an affirmative defense. Therefore, the defendant must prove, by a preponderance of the evidence, that both—
>
> 1. at the time of the conduct alleged, the defendant was involuntarily intoxicated; and
>
> 2. as a result of that involuntary intoxication, the defendant did not know his conduct was wrong.
>
> The burden is on the defendant to prove, by a preponderance of the evidence, that he comes within the affirmative defense of involuntary intoxication.

---

[1] The record is unclear when, in relation to the events of this case, Gatewood was diagnosed with schizophrenia and when he was prescribed medication for it.

[2] In Gatewood's closing arguments, he tried to argue that, in the alternative, he suffered from a "psychotic episode," but the trial court sustained the State's objection because there was "no testimony to that effect."

"Intoxication" means a disturbance of the mental or physical capacity resulting from the introduction of any substance into the body.

"Intoxication" is involuntary if the intoxication is (1) the result of the introduction of a substance into the defendant's body without his knowledge or (2) the result of the defendant's introduction of a substance into his body under circumstances in which the defendant neither knew nor should have known, with the exercise of reasonable care, that the substance had a tendency to cause intoxication.

We now examine Gatewood's claim that the evidence was legally insufficient to support the jury's rejection of his involuntary intoxication defense.

Insanity is an affirmative defense to prosecution, and involuntary intoxication that causes insanity is included within the affirmative defense of insanity. TEX. PENAL CODE ANN. § 8.01; *see Mendenhall v. State*, 77 S.W.3d 815, 817–18 (Tex. Crim. App. 2002); *Torres v. State*, 585 S.W.2d 746, 748–50 (Tex. Crim. App. 1979). Involuntary intoxication is an affirmative defense to a criminal indictment if, at the time of the alleged offense, the defendant "has exercised no independent judgment or volition in taking the intoxicant . . . and, as a result of his intoxication[,] he did not know that his conduct was wrong." *Farmer v. State*, 411 S.W.3d 901, 912 (Tex. Crim. App. 2013).

"When [a court of appeals] considers the legal . . . sufficiency of the evidence in dealing with those few instances in criminal cases in which the burden of proof is a preponderance of the evidence, such as affirmative defenses, [the court is] to use the civil standards for legal . . . sufficiency." *Afzal v. State*, 559 S.W.3d 204, 207 (Tex. App.—Texarkana 2018, pet. ref'd) (quoting *Brooks v. State*, 323 S.W.3d 893, 924 (Tex. Crim. App. 2010) (plurality op.) (Cochran J., concurring)). When reviewing the legal sufficiency of the evidence to support the rejection of

a criminal defendant's affirmative defense, we employ a two-step process. *Matlock v. State*, 392 S.W.3d 662, 669 (Tex. Crim. App. 2013) (citing *City of Keller v. Wilson*, 168 S.W.3d 802 (Tex. 2005)). First, we examine the record to determine whether "more than a mere scintilla" of evidence supports the jury's rejection of the defense. In doing so, we disregard all evidence that supports the affirmative defense unless a reasonable fact-finder could not. *Id.* at 669. Second, if no evidence supports the jury's rejection of the affirmative defense, we then determine whether the defendant established the affirmative defense as a matter of law. *See id.* at 669–70. If the record reveals evidence supporting the affirmative defense but that evidence was subject to a credibility assessment and was evidence that a reasonable jury was entitled to disbelieve, the court does not consider that evidence in the matter-of-law assessment. *See id.* at 670. "Only if the appealing party establishes that the evidence conclusively proves his affirmative defense and that no reasonable jury was free to think otherwise, may the reviewing court conclude that the evidence is legally insufficient to support the jury's rejection of the defendant's affirmative defense." *Id.* (quoting *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009)).

Gatewood contends that he was intoxicated by K2 through accident, inadvertence, or mistake. *See Farmer*, 411 S.W.3d at 913 (Cochran, J., concurring). By finding Gatewood guilty, the jury necessarily rejected his involuntary intoxication defense. Therefore, we review the evidence to determine whether there is more than a scintilla of evidence to support the jury's rejection of his involuntarily intoxication defense and, if there is not, whether Gatewood proved the defense as a matter of law.

8

Although not squarely on point, the facts of this case are similar to those of *Peavey v. State*, 248 S.W.3d 455 (Tex. App.—Austin 2008, pet. ref'd). Peavey was convicted of driving while intoxicated (DWI) and evading arrest. He testified that he drank a glass of wine with his boss's son before his arrest. *Id.* at 461. He claimed to have no memory from the time he drank the wine until he woke up in jail. *Id.* Peavey further claimed that his boss's son must have drugged the glass of wine. *Id.* at 462. Peavey requested an instruction on the voluntariness of his actions, which the trial court denied. *Id.* at 459. On appeal, the court determined that Peavey did not produce evidence warranting a voluntariness instruction, holding that Peavey's claim that he must have been drugged was unsupported by the evidence and was "mere speculation." *Id.* at 465. As a result, the trial court did not err in denying the instruction. *Id.* at 465–66. Other courts have similarly held that a defendant's speculation that he was, or had to have been, drugged is insufficient evidence to warrant an involuntary intoxication instruction. *See Quinn v. State*, No. 01-12-01147-CR, 2014 WL 60713, at *4–5 (Tex. App.—Houston [1st Dist.] Jan. 7, 2014, no pet.) (mem. op., not designated for publication); *Lewis v. State*, No. 05-12-00837-CR, 2013 WL 5888117, at *8 (Tex. App.—Dallas Oct. 31, 2013, pet. ref'd) (mem. op., not designated for publication); *Harris v. State*, No. 02-09-00177-CR, 2011 WL 754396, at *4 (Tex. App.—Fort Worth March 3, 2011, no pet.) (mem. op., not designated for publication); *see also Ellison v. State*, Nos. 05-04-00257-CR & 05-04-00258-CR, 2005 WL 553387, at *2 (Tex. App.—Dallas Mar. 10, 2005, pet. ref'd) (mem. op., not designated for publication); *Alexander v.*

*State*, No. 03-01-00263-CR, 2002 WL 436993, at \*3 (Tex. App.—Austin Mar. 21, 2002, no pet.) (mem. op., not designated for publication).[3]

Ignoring all the evidence that supports the affirmative defense of involuntary intoxication, as we must, we find there is more than a scintilla of evidence on which a jury could have rejected Gatewood's claim of involuntary intoxication. *See Matlock*, 392 S.W.3d at 669. Gatewood testified that Junior smoked K2, that Junior had been at Gatewood's house recently, and that Hill, who was often at his house, consistently rerolled the cigarette butts in his ashtray. Gatewood argued that Junior must have left a K2 cigarette butt in the ashtray and that Hill must have rerolled it and left it in the ashtray. Based on that evidence, the jury could have rejected his involuntary intoxication defense, reasoning that Gatewood's intoxication, if any, was voluntary[4] because he should have known through the exercise of reasonable care that the cigarette that he took from the ashtray could contain K2. *See Farmer*, 411 S.W.3d at 907–08 (no voluntariness instruction where defendant failed to verify which prescription medication he was taking "although he knew that he was prescribed medications that could have an intoxicating effect"). Furthermore, the evidence also established that Gatewood had experienced prior episodes of similar violent conduct where he denied being intoxicated. Based on that evidence, the jury could have believed that Gatewood was not intoxicated during the events of this case because his actions were similar to his prior unintoxicated incidents. Therefore, there is more than a scintilla

---

[3]"Although unpublished cases have no precedential value, we may take guidance from them 'as an aid in developing reasoning that may be employed.'" *Rhymes v. State*, 536 S.W.3d 85, 99 n.9 (Tex. App.—Texarkana 2017, pet. ref'd) (quoting *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd)).

[4]Insanity caused by voluntary intoxication does not constitute a defense to the commission of a crime. TEX. PENAL CODE ANN. § 8.04(a).

of evidence to support the jury's rejection of Gatewood's affirmative defense of involuntary intoxication. *See id.*

Even if there was less than a scintilla of evidence, Gatewood failed to prove, as a matter of law, his affirmative defense. *Matlock*, 392 S.W.3d at 669–70. The only evidence in support of his defense was his own self-serving, speculative, or uncorroborated testimony that he did not remember the episode and that K2 must have been in the cigarette that he smoked, but we do not consider that evidence because it was subject to the jury's credibility assessment and reasonable disbelief. *See id.* at 70; *Peavey*, 248 S.W.3d 455.

Accordingly, we overrule this point of error and affirm the trial court's judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted:      September 9, 2022
Date Decided:        September 28, 2022

Publish

11